CLINTON SPECIAL TERM, October, 1850.  *Hand*, Justice.

### PLATT ARTHUR and others *vs.* LEWIS ARTHUR.

Where land is devised to several persons in fee, in undivided shares, a subsequent conveyance by the devisor to one of the devisees, of a part of the same land, will not revoke or be deemed a satisfaction of the devise to the grantee ; but he is entitled to the land conveyed by deed, and to a share in the land remaining, under the will. And this, although it appears there was a mutual mistake as to the effect of the deed, both parties supposing the land conveyed would be in lieu of the share given to the grantee, by the will.

Where parties make just such instruments as they intend to make, and without fraud, surprise, undue influence, or mistake of their rights, but act under an error as to the mere legal effect of the instrument, that alone will not authorize a correction by a court of equity.

A will can not be corrected because the testator misapprehended its effect. Nor, as a general rule, is parol evidence admissible to supply omissions, or to control or explain the intention, or vary the legal construction.

A conveyance made subsequent to a devise of land, is not a revocation, or satisfaction, of a devise of other lands to the grantee. But if the conveyance be of a portion of the same land, that is a revocation *pro tanto*.

VOL. X. 2

Arthur *v.* Arthur.

IN EQUITY. The facts in this case are briefly these : Joshua Arthur being possessed of real and personal estate, made his will on the 3d day of February, 1844, which was duly proved before the surrogate, on the application of three of the complainants, who were named as executors. He ordered his executors, thereinafter named, to pay all his debts and funeral expenses. He then gave all the rest and residue of his real and personal estate, wherever situated, to his five sons, three daughters and a grandson, son of a deceased daughter, their heirs and assigns forever, as tenants in common, in the proportion of two shares to a son to one to a daughter ; the grandson, also, taking one share. The sons to take and share equally among themselves ; and so with the daughters and grandson. The shares of two of the sons and one daughter and the grandson, were to be reduced respectively, certain amounts in the will specified, for certain sums already advanced to them.

These devisees, with the husbands of the daughters, were parties to this suit ; Lewis Arthur, the defendant, being one of the sons. The share of one of the daughters was given to her separate use, free from her husband. The division of the property was not to take place, unless the devisees otherwise agreed, until the expiration of two years from the testator's decease, and one daughter, Sarah, was to be supported in the mean time, and to have one cow, over and above the others.

On the 4th of August, 1844, the testator conveyed to his son, Lewis Arthur, 29 acres of his homestead farm, by a warranty deed, duly acknowledged, for the consideration of one dollar, as expressed in the deed. The defendant carried on the whole of the farm upon shares, that season ; but soon after the deed, began to build a house upon it, and has ever since been in possession of the 29 acres. These 29 acres were, in value, equal to the defendant's share, or nearly so, of the real estate, under the will. The testator died on the 25th of October, 1844, aged seventy-seven. His executors, three of the complainants, received letters testamentary, and settled his personal estate before the surrogate of Clinton county, in April, 1848. It appeared by the decree, that there was not sufficient personal property to pay

Arthur *v.* Arthur.

the debts; but by including the use of the real estate since the testator's death, there was sufficient to pay all claims, including Sarah's support, except about $30.

The bill alledged, that at the time of the conveyance, the grantor was feeble and incompetent to convey, and did not mean to part with his real estate or alter the distribution of his property. That he was enfeebled in mind, and easily persuaded, and lived in the same house with the defendant, who fraudulently persuaded him to make the conveyance, under the belief that it would be his share, but omitted so to state in the deed. Prayer that the land conveyed be deemed full satisfaction of the devise to the defendant, and that he release all claim to the residue, or that the conveyance be declared null and void, and for general relief.

The answer denied all fraud, deceit, or importunity or management, to obtain the deed; denied the incompetency of the grantor; or his ignorance of the effect of the deed; or that the conveyance was for the defendant's share under the will; admitted there was no money paid, except the nominal sum of one dollar; but insisted that the defendant had performed valuable services for the grantor, in the care of his person, in the interim between the date of the will and the deed, for which the conveyance was intended to be a compensation, connected with the circumstances in life of, the defendant compared with those of the complainants. The defendant claimed his full share under the will.

Proofs were taken in the cause. Evidence of what the testator had said, was given on both sides, under objection, and the question of admissibility reserved.

After the complainants had proved the value of the property, the defendant introduced evidence. One witness testified that the testator, during the summer of 1844, was very troublesome to take care of in the night. That about the last of August he told witness that the defendant was doing a good deal for him, more than some of his children, and had left his bed to sleep with him. That he relied more particularly upon Wallace, (another son,) but had come to the conclusion that he was not

Arthur *v.* Arthur.

going to do much for him. That he had seen fit to give him a piece of land, which, if he was prudent, would make him a little home. That he was not so reckless as he used to be. That he (testator) had property enough to carry him through, and what was left, he had disposed of by a will. The witness stated that the defendant owed him $30 or $40, and that witness had been his surety.

· Another witness testified to a settlement between witness and testator, at Keeseville, on the 14th day of Aug. 1844; and that the testator there examined the accounts. The settlement took place about three miles from testator's residence. That testator told him, in the presence of the defendant, that the defendant was the only one who took care of him; and he was going to deed him a piece of land to pay him for it. That the defendant owed witness a judgment, for about $190. That he had owed him about $500; $300 of which had been paid by a brother, one of the complainants. That he had seen a mortgage on this land by defendant to that brother, for $750.

Another witness testified, that he began to work for the defendant in July, 1844, and that the testator then needed much care. That the defendant slept with him. That in the defendant's absence, the witness slept with him two or three nights, and it was a bad task to take care of him. That the testator said the defendant was the only one that took any care of him; and about the last of August he told the witness he had rewarded him for it.

On the part of the plaintiffs, Dr. Weston testified, that the testator had a dyspeptic complaint, from the year 1841 until his death. Sometimes it assumed the form of a diarrhea. From June until August, 1844, he visited him occasionally. His sons, Wallace and Lewis, were there, and both attended him, though Lewis seemed the most busy about his own business. On the 13th of August he visited him, and he appeared low-spirited. That the witness was about to leave, when the testator asked him to stop, and told him the defendant had been asking him to deed his share to him then, as he wanted to build upon it; and he (the testator) desired the witness to compute what

Arthur *v.* Arthur.

the defendant's share would be. The testator stated over what he had advanced to some of his children, and what proportion each was to have; and that money was to be considered land at $40 per acre, in the computation. His daughter, Sarah, got the paper. Witness made the defendant's share thirty acres and a fraction; and the testator said, that might be right as the boys made it; though he seemed to doubt. Witness told him if he did not give too much, the will would provide for the rest, with which he seemed pleased. The testator then asked the witness if he thought he could go to Keeseville to do the business; and the witness told him he thought he could. The testator did not read the will, but spoke of its contents. That witness, in making the computation, took the parcels of land, and their amount, from the testator. The testator said he wished the defendant to have his share then, so he could build upon it; and asked witness if it was necessary for him to alter his will. The witness told him he thought it was, or to take a receipt from Lewis; or some acknowledgment. But added, he did not know any thing about it, and advised him to ask a lawyer. That the testator then appeared sociable and in a good state of mind. The complainants, Sarah Arthur and Wallace Arthur, were present, and Lewis Arthur was not, except occasionally, during this transaction.

Another witness testified, that on his asking the defendant for a small debt, he desired him to wait, and said that he was building or about to build a barn, and when he got through that, he would try to pay it. That he had got his land or his portion of the land to himself, and could do something; and as soon as he got through building, he would try to pay it. That he had got his land by himself, and should know what he had, and what to calculate upon. The witness could not state whether this conversation was before or after the death of the testator, but thought it was after. This testimony was objected to by the defendant's counsel, and the testimony received, and the question reserved. He further testified, that about the last of August or first of September, 1844, the testator told him Lewis

had got his portion of the land, and he hoped he would be steady and do something.

It appeared that the oldest son was about 43 years of age at the time of the trial; the defendant about 34. Sarah was the youngest. Some of the complainants had considerable property, others very little. The defendant, at the time of the conveyance, had no property, but was in debt. He had a wife and one or two children, and had been improvident. The testator acknowledged the deed at Keeseville. It appeared that the testator gave his son Wallace a memorandum or certificate, setting off his portion of his lands, being also a part of the homestead, which part was occupied by Wallace in 1844, but in the bill he offered to forego this apportionment. Wallace was not one of those to whom advancements had been made, as stated in the will. Some other minor points of the testimony are referred to in the opinion of the court.

*Geo. A. Simmons*, for the complainants.

*L. Stetson*, for the defendant.

HAND, J. This cause has been very fully and ably argued, and I have given it much attention. It is clear to my mind, disregarding all objections to the nature of the evidence, that the testator at, and at all times after the publication of his will, intended to make a distribution of his property in strict conformity to its terms. I can not give any force to the testimony in relation to the casual remarks said to have been made by the testator, that he was rewarding or paying the defendant for his care or labor. It pretty clearly appears that the defendant, after his marriage, had been assisted by the testator to some of the necessaries of life; and he was, at the time of the conveyance, carrying on his farm upon shares. The testator was occasionally sick; but the defendant states and proves that, before and at the time the deed was given, he was able to be in the fields, and go to a neighboring village; and the physicians show he had no very serious illness between the publication of the

will and the execution of the conveyance.  Under such circumstances, it is preposterous to say that the conveyance of 29 acres of the best part of his farm, worth $40 per acre, was given by way of compensation.  The deed itself rebuts this presumption, and we have the declarations of the grantor and grantee, deliberately made, evincing a contrary intention.  Indeed there is no doubt in my mind, that the deed was given by the testator and received by the defendant, and at his request, both supposing the land conveyed would be in lieu of his share under the will.  If the defendant can hold double portions in such a case, it is because of some unbending rule of law.  Equity is opposed to double portions.  But a man may dispose of his own property as he pleases, and his will is a reason for the deed ; and if, as matter of law, the defendant has received two shares, the court can not interfere.  Two of the points made by the complainants, incompetency and fraud, are wholly unsustained.  As to the first, his physician saw and conversed with the testator upon this subject on the day preceding, and his mind was clear and vigorous ; and on the day he gave the deed, he settled his account with a merchant two or three miles from his residence, and, so far as appears, with ordinary intelligence.  And his explanations to his physician at the time the latter computed the defendant's share, I think put at rest the question of fraud.  There is no doubt but that the defendant had been soliciting a conveyance, and may have induced the testator to comply ; but there is no evidence that he exercised any undue influence, or misled him.  On the contrary, it is quite clear that both of them had the same opinion, as to the effect of the deed.   Old age alone is not a sufficient reason for presuming imposition.  (*Lewis* v. *Read*, 1 *Ves. jun.* 19.   *Butler* v. *Benson*, 1 *Barb. S. C. Rep.* 526.   *And see* 3 *Denio*, 37.)  Had there been circumstances inducing the belief that improper means had been employed, the case would be different.  (*Sears* v. *Shaffer*, 1 *Barb. S. C. Rep.* 408.)

Upon the hypothesis of a mistake by the testator, or even a mutual mistake as to the effect of the deed, equity can give no relief.  It is simply a mistake of law.  Where the parties make just such instruments as they intend to make, and without fraud,

· surprise, undue influence or mistake of their rights, but labor under an error as to the mere legal effect, that alone will not authorize a correction by this court. (*Hunt* v. *Rousmaniere's Adm'rs*, 1 *Peters*, 1. *Hall* v. *Reed*, 2 *Barb. S. C. Rep.* 500. *Lyon* v. *Richmond*, 3 *John. Ch.* 60. 1 *Stor. Eq.* §§ 113 *to* 127, *and cases there cited. Webb* v. *Rice*, 6 *Hill*, 219.) A will can not be corrected because the testator misapprehended its effect. Nor, as a general rule, is parol evidence admissible to supply omissions, ·or to control or explain the intention, or vary the legal construction. (*Mann* v. *Mann*, 14 *John.* 1. *Farrer* v. *Ayres*, 5 *Pick.* 404. *Weston* v. *Foster*, 7 *Metc.* 297. *Adams* v. *Winne*, 7 *Paige*, 99. 2 *Stor.Eq.* § 1531. 1 *Phil. Ev.* 548. *Martin* v. *Drinkwater*, 2 *Beav.* 215. *Irving* v. *Dekay*, 9 *Paige*, 528. *Pole* v. *Ld. Somers*, 6 *Ves.* 309. *Jackson* v. *Kniffen*, 2 *John.* 31. *Jackson* v. *Sill*, 11 *Id.* 201. *Cave* v. *Holford*, 3 *Ves.* 650.) Many of these cases are very decisive. It follows, that the parol evidence was inadmissible to prove that the testator mistook the nature and legal effect of the deed, or its effect upon his will. The state of the testator's property and family, and the circumstances that surrounded him, may be shown, but he can not, by parol declarations, give a legal construction to his will, any more than to his deed. · That would repeal our present statute in relation to wills, and the statute of frauds before the revision.

But, if the case can be put upon the same ground as the satisfaction of legacies and portions was formerly, I think parol evidence admissible to rebut or to corroborate the presumption of satisfaction. I am aware that some judges have made general remarks inconsistent with this doctrine; but, at least, until the recent act there in relation to wills, (1 *Vict. ch.* 26, 3d *of July*, 1837,) the rule appears to have been well settled in England. Parol declarations for that purpose, made before and after making a will or the settlement of a portion, were admissible. In *Trimmer* v. *Bayne*, (7 *Ves.* 508,) Lord Eldon, speaking of the satisfaction of a legacy by a portion, said, "it is clearly decided that there is such a presumption. It is also clearly established that parol evidence is admissible to rebut the presumption." Again; " I fear there is no possibility of saying that parol dec-

Arthur *v.* Arthur.

larations, both previous and subsequent, are not admissible." Though in that case, as they were mere gossip, and given in answer to impertinent questions, he gave them no weight. They should be made to the parties interested, or those in some way connected with them, as a relative, agent, &c. Lord Thurlow, Lord Kenyon and Mr. J. Buller seem to have opposed the rule, or rather submitted to it with reluctance; but a long series of decisions has confirmed it. (*Ellison* v. *Cookson,* 1 *Ves. jun.* 100. *Freemantle* v. *Banks,* 9 *Ves.* 79. *Shudall* v. *Jekyll,* 2 *Atk.* 516. *Robinson* v. *Whitley,* 7 *Ves.* 577. *Wallace* v. *Pomfret,* 11 *Id.* 542. *Walton* v. *Walton,* 148 *Id.* 31. *Bengough* v. *Walker,* 15 *Id.* 507. *Herbert* v. *Reid,* 16 *Id.* 481. *Loyd* v. *Harvey,* 2 *Russ. & My.* 310. *Weall* v. *Rice, Id.* 251. *Williams* v. *Crary,* 8 *Cowen,* 246. *Kirk* v. *Eddowes,* 8 *Jur.* 530. *Brady* v. *Cubitt, Doug.* 30. 2 *Stor. Eq. Jur.* §§ 1102, 1114, 1531. *Cowen & Hill's Notes,* 1494. 1 *Greenl. Ev.* § 296. *Matt. Pre. Ev.* 113, 136, 7, 146, 150). If such evidence is admissible here, and the presumption of satisfaction applies to such a case, there is no difficulty.

If this were a legacy of a certain amount, under the former law, there would be no doubt that a sum afterwards advanced would, *prima facie,* apply in satisfaction. (2 *Story's Eq. Jur.* 1111.) There is an almost unbroken current of authority to this point. In *Rosewell* v. *Bennett,* (3 *Atk.* 77,) $300 were directed to be laid out in apprenticing one of the children, but the testator in his lifetime expended $200 in obtaining for him a clerkship, and Ld. Hardwicke said it was an ademption of the legacy. The same judge maintained the same doctrine in *Farnham* v. *Philips,* (2 *Atk.* 215.) And there are a great many authorities directly in point. (*Ellison* v. *Cookson,* 1 *Ves. jun.* 100. *Trimmer* v. *Bayne,* 7 *Id.* 508 *Pym* v. *Lockyer,* 5 *My. & Cr.* 29. *Haretop* v. *Whitmore,* 1 *P. Wms.* 681. *Bengough* v. *Walker,* 15 *Ves.* 507. *Dubost ex parte,* 18 *Id.* 140. *Thelluson* v. *Woodford,* 4 *Madd.* 420. *Suisse* v. *Lowther,* 7 *Jur.* 252. 1 *Rop. on Leg.* 318. *Toll.* 329.)

And so a provision in a will, sometimes satisfies a portion secured upon settlement. (*Bengough* v. *Walker,* 15 *Ves.* 507.

*Copley* v. *Copley*, 1 *P. Wms.* 147. *Weall* v. *Rice*, 2 *Russ. & My.* 251. *Jesson* v. *Jesson*, 2 *Vern.* 255. *Finch* v. *Finch*, 1 *Ves. jun.* 534. *Wathen* v. *Smith*, 4 *Madd.* 325. *Boker* v. *Allen*, 4 *Russ. & My.* 270.) And an advance to her husband, at the legatee's request, was held a satisfaction. (*Kirk* v. *Eddowes*, 8 *Jur.* 530.) And even a portion secured by settlement, it seems, would be satisfied by descent or distributive share. *Wallcott* v. *Bloomfield*, (4 *Dru. & W.* 211;) *Lechmere* v. *Earl of Carlisle*, (3 *P. Wms.* 211;) *Wilcox* v. *Wilcox*, (2 *Vern.* 548;) *Snowden* v. *Snowden*, (1 *Bro. C. C.* 582; *S. C.* 3 *P. Wms.* 228, *n.*) were all cases of realty; and so, in effect, was *Garthshore* v. *Chalie*, (10 *Ves.* 1.) Though land taken by descent is not a portion, under the statute of distributions. (*Lord Eldon in Twisden* v. *Twisden*, 9 *Ves.* 425.) But otherwise as to land claimed by settlement. (*Id.*) And a provision by a will has been, for some purposes, considered an advancement in the lifetime of a party. *Leake* v. *Leake*, (10 *Ves.* 489; *Blandy* v. *Widmore*, (1 *P. Wms.* 324,) and *Lee* v. *Cox*, (3 *Atk.* 419,) were cases of intestacy, and distributive shares were held to be satisfaction or performance.

And in these cases of satisfaction, if the account was less than the will or settlement, it was generally considered satisfaction *pro tanto*. (*Per Ld. Cottenham, in Pym* v. *Lockyer*, 5 *My. & Cr.* 29. *Kirk* v. *Eddowes, supra.* 2 *Stor. Eq. Jur.* § 1111.)

But the counsel for the defendant insists that this doctrine is never applicable to a devise or bequest of the residue. This is so. (*Stor. Eq. Jur.* § 1115. *Freemantle* v. *Banks*, 5 *Ves.* 79. *Farnham* v. *Philips*, 2 *Atk.* 215. *Davis* v. *Boucher*, 3 *You. & Col.* 297.) Ld. Hardwicke, in *Farnham* v. *Philips*, said there was no case where the devise has been of a residue, in which a subsequent portion given had been held to be an ademption. And I am aware that Ld. Loughborough said, in *Freemantle* v. *Banks*, that the residuary estate in *Watson* v. *Ld. Sondes*, (*Amb.* 325,) was considerable. But where, as in this case, the whole object of the will is merely a division of all the testator's estate among his children, and in a manner hardly breaking the descent, and but just allowing them to take by purchase, in fact

devising all his property but a cow, by this, so called, residuary clause, I can not think this rule applies.

The general rule, no doubt is, as laid down by the courts in several cases, that if a portion be given to a child, by will, after a provision has been secured by marriage settlement, or advanced in the lifetime of the testator after making provision by his will, *prima facie* the gift by the will in one case and the advancement in the other, is a satisfaction or ademption, *pro tanto*, if certain, and *ejusdem generis.*

I have thus far examined this case to see if it could be decided without reference to a point made by the defendant's counsel, upon which I have had much difficulty ; which is, that this doctrine of ademption of a provision by will is not applicable to real estate.

In the case of *Rosewell* v. *Bennett,* (*supra,*) the devise was of all the testator's real and personal estate, and on the plaintiff offering to read evidence of the parol declarations of the testator that the £200 advanced was an ademption of the legacy, it was objected as being contrary to the statute of frauds ; but Lord Hardwicke admitted it. He called it an ademption of the legacy, not a revocation of the will. And Mr. J. Spencer, in *Jackson* v. *Kniffen,* (2 *John.* 31,) said a will, whether of real or personal estate, can not be revoked since the statute of 29 Car. 2, by words alone. It was otherwise before. (1 *Jarm.* 113.) In *Bellasis* v. *Uthwalt,* (1 *Atk.* 427,) speaking of satisfaction by bequest, of money due, Ld. Hardwicke said, "land is not to be taken in satisfaction of money, nor money of land." *Weall* v. *Rice,* (*supra ;*) *Wilcox* v. *Wilcox,* (*supra ;*) *Richardson* v. *Elphinstone,* (2 *Vesey sen.* 463 ;) *Goodfellow* v. *Burchette,* (2 *Vern.* 298 ;) *Chaplin* v. *Chaplin,* (3 *P. Wms.* 245 ;) *Pole* v. *Ld. Somers,* (6 *Ves.* 309 ;) *Garthshore* v. *Chalie,* (10 *Id.* 1,) relating to realty, were cases on settlement.

It has been said that implied revocations were not within the statute of frauds. (8 *Vin.* 160. 1 *P. Wms.* 304, *n. And see* 1 *Jarm.* 108.) That it left revocation by conclusion and operation of law, where it found them. (*Pow. on Dev.* 630.) And in *Brady* v. *Cubitt,* (*Doug.* 70,) counsel admitted that " implied

revocations subsist as before the statute of frauds." And the court did not doubt but there might be an implied revocation. Ld. Mansfield, citing the case mentioned by Cicero, where the father supposed his son to be dead. But I have not been able to find any case, where a conveyance subsequent to a devise of land, has been held a revocation or satisfaction of a devise of other lands to the same devisee. If the conveyance be of a portion of the same land, that, of course, is a revocation *pro tanto*. (*Clerk* v. *Berkeley*, 2 *Vern.* 720; *S. C. nom. Clerk* v. *Lucy*, 8 *Vin.* 154.) In *Clerk* v. *Berkeley*, the testator devised different parcels of land to different daughters, and afterwards conveyed to one, part of the lands devised to her; and it was held a revocation *pro tanto* only, and she took the remainder of the lands devised to her, under the will.

*Rider* v. *Wager* was decided by Ld. C. King in 1725, and is found in Peere Williams and Viner. (2 *P. Wms.* 328. 8 *Vin.* 148.) The testator, after devising certain property (six houses) to his wife in bar of dower, devised all his property real and personal to his two daughters, A. and B. in equal moieties. After that, on the marriage of A. he covenanted to settle one moiety of all his realty to his own use for life, remainder to A. and her husband, &c. Subsequently, he made a codicil, by which, after stating that he had limited a jointure of £400 per annum to his wife by deed in bar of dower, he gave £3000 stock to his daughter B. and confirmed his will, subject to the marriage articles. It was held that A. and her husband were entitled to an entire moiety of the realty, under the settlement; and that the devise to the widow must be made good out of the other moiety, and then the surplus of that moiety be divided equally between the two daughters.

*Davys* v. *Boucher* is a recent case, (3 *You. & C.* 397; 3 *Jur.* 674.) The testator gave his son and two daughters, M. and B., £100 each; and all his freehold estate at R. and elsewhere to his son in fee. He also gave each of the daughters a yearly rent charge of £50, charged upon his estates at R. He afterwards purchased an estate at P.; and by a codicil devised it to the daughters in fee as tenants in common. On the marriage

of M. he gave a bond to secure £1000 as the immediate provision for the marriage, and to pay £1000 more on his death. Afterwards, B. married, and he settled the P. estate and £400 as a provision for that marriage. And it was held there was no ademption of the benefits given to the daughters by the will. It was said that where a legacy was given to a child by way of a portion, and afterwards the father (or person in *loco parentis*) makes advances in the nature of a portion to the child, it will be an ademption of the gift, by the will; but that this doctrine applied only to legacies, and not to a devise of real estate. To hold that it applied to devises of real estate, would be to repeal the 6th section of the statute of frauds.

Our statute declares " that no will in writing, except in cases hereinafter mentioned, nor any part thereof, shall be revoked or altered," &c. and then provides for a revocation by another will, by cancellation &c., by marriage and birth of issue, or marriage of a female; and when a contract to sell, a conveyance, or charge, shall be a revocation. And that in case of conveyance, settlement or deed, the devise shall not be revoked, unless the testator's interest be wholly divested, or it is so declared in the instrument. (2 *R. S.* 645, §§ 42 *to* 47.) And the 48th section is as follows : " But if the provisions of the instrument by which the alteration is made, are wholly inconsistent with the terms and nature of such previous devise or bequest, such instrument shall operate as a revocation thereof," unless it depends upon a contingency, &c. Revocation *pro tanto* may be by altering the quality of the estate and abridging the interest therein, or diminishing the quantity of the thing devised. (*Pow. on Dev.* 624.)

Taken literally, the statute has swept away all implied revocations, except what are embraced within its provisions. No written will can be revoked or altered in any other manner. And that was what the revisers sought to accomplish. (3 *R. S.* 632, 2*d ed.*) The 23d section of the recent English act is very similar; and the 19th section provides, " that no will shall be revoked by any presumption of an intention on the ground of alteration of circumstances." If then we are confined to the statute, where land is devised to several in fee in undivided shares, does

a subsequent conveyance to one of the devisees of a part of the same land, without any or a merely nominal consideration paid, revoke the devise to him as to the remainder? and if at all, partially or totally?

*Clerk* v. *Berkley* decided that a devise in severalty is not revoked by a subsequent conveyance of part to the devisee. And the case cited from the civil law by Mr. Justice Story was one of the same kind. (2 *Story's Eq. Jur.* § 1114.) In *Ryder* v. *Wager*, the devise was of an undivided interest; but there the subsequent conveyance (or contract to convey, which was the same in equity) was very different from the devise; for, after a life estate to the devisor, the remainder was to the devisee and her husband for their lives, remainder to their younger children in tail general and remainder to the husband in fee; and beside, there was a codicil confirming his will, subject to these marriage articles; upon which fact the lord chancellor laid some stress; but upon its being pressed that equality was intended by the testator, he remarked, " that though it might be the intention of the testator, it was nevertheless going too far from the plain words;" and this he said before adverting to the fact of there being a codicil. In that case, the effect of the devise, particularly as to the six houses, was shifted on to the last moiety with great freedom, and yet it does not appear that the statute of frauds was noticed. In *Davys* v. *Boucher*, the land settled upon the daughter was not the same out of which the rent charge was payable; indeed was purchased after the will. And it seems there was also testimony that the testator intended to provide for his daughters equally.

Although I find no case of a devise of realty precisely like the one under consideration, yet it seems pretty clear, that under the former law in England, the devise to the defendant would not have been revoked as to the lands of which the testator died seised. Nor can I see that the provisions of this deed, by which the will is revoked as to the 29 acres, are so "wholly inconsistent with the terms and nature" of the devise of the remainder of his property, as to operate as a revocation of that part. I am aware that the language used in the books is sometimes general, ap-

parently including real as well as personal estate.  Perhaps now there is no difference in this state between a will of real and one of personal estate, as to revocation, though it is not necessary here to decide that point.  (*Pond* v. *Bergh*, 10 *Paige*, 149.) But, irrespective of the statute relating to revocations, this point is against the complainants.  It is not difficult to form a belief as to the testator's opinion of the effect of these instruments. But in these cases of imperfect obligation, all we are allowed to do, is to judge of his intentions by the legal effect of the instruments themselves, under the circumstances.  There are many cases where the legal construction has no doubt defeated the actual intention.  In *Hussey's case* it was revoked by a subsequent feoffment to the use of the will.  (*Hussey's case, Moor*, 789.  And see *Sparrow* v. *Hardcastle*, 3 *Atk.* 803 ; *Marwood* v. *Twiner*, 3 *P. Wms.* 163 ; *Walton* v. *Walton*, 7 *John. Ch.* 258 ; *Bennett* v. *Tankerville*, 19 *Ves.* 170 ; *Attorney General* v. *Vigor*, 8 *Id.* 281 ; *Brydges* v. *Duke of Chandos*, 2 *Ves. jun.* 417.)  A will of land, said Lord Loughborough in *Brydges* v. *Duke of Chandos*, is no more than an appointment of the person who shall take the specific land at the death of the person making it.  (2 *Ves. jun.* 427.)  It is considered a conveyance declaring the uses, though it raises no use, and passes no interest till the death of the testator.  (*Cave* v. *Holford*, 3 *Ves.* 650, *Rooke, J.*)  Formerly it was specific, whether in particular or general terms.  Even a residuary devise has been held specific. (*How* v. *Earl of Dartmouth*, 7 *Ves.* 147.  *Spong* v. *Spong*, 1 *Y. & J.* 300.  And see *Ram on Wills*, 3, 4, 177 ; *Hill* v. *Cooke*, 1 *V. & B.* 175 ; *Milnes* v. *Slater*, 8 *Ves.* 305.)  And no words the devisor could use would pass after acquired lands. But now, a will in express terms of all the testator's real estate passes all he could devise at the time of his death.  (2 *R. S.* 57, § 5.  *Pond* v. *Bergh*, 10 *Paige*, 149.)  It speaks, in a certain sense, at the time of his death.  The testator is supposed to know, and act with reference to the law ; and although our statute does not, like the English act, expressly declare that it shall "speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall

appear by the will," yet especially where, as in this case, the testator lives more than two months after the deed and after his attention had been called to the subject, I do not see how, as matter of law, it can be said he intended to wholly revoke the devise to the defendant.

The deed expresses a consideration of one dollar. This is sufficient to sustain the deed, whether any consideration was actually paid or not. (*McCrea* v. *Purmort*, 16 *Wend*. 460. *Grant* v. *Townsend*, 2 *Hill*, 554.) And this was so before our statute in relation to trusts. (*McCrea* v. *Purmort*, *supra*. *Belden* v. *Seymour*, 8 *Conn.* 304. 4 *Kent*, 465. *Lloyd* v. *Spillet*, 3 *P. Wms.* 344; *S. C.* 8 *Vin.* 149; *S. C.* 2 *Atk.* 149.) In *Lloyd* v. *Spillet*, which was a very hard case, and was decided by Lord Talbot in 1734, and came before Lord Hardwicke on a rehearing in 1740, the only valuable consideration expressed, was ten shillings, and it was held sufficient to raise the use and prevent a resulting trust. (*And see Jackson* v. *Alexander*, 3 *John.* 484. *Co. Litt.* 23 *a*. 1 *Cruise*, 408. *Leman* v. *Whitley*, 4 *Russ.* 423. 4 *Kent*, 465.) And before the statute of Hen. 8, a feoffment to a stranger, without consideration, raised a use to the feoffor, but not if by a father to his son, for the consideration of blood settled the use to the son, and made it an advancement. (*Grey* v. *Grey*, 2 *Swanst.* 598. *Hill on Trusts*, 96, 97. *And see Meeker* v. *Meeker*, 16 *Conn.* 383; *Beach* v. *Packard*, 10 *Verm. Rep.* 96.)

The doctrine of advancements does not aid the complainants, for that is confined to cases of intestacy. (1 *R. S.* 754, §§ 23, 26. *Walton* v. *Walton*, 14 *Ves.* 318. *Hawley* v. *James*, 5 *Paige*, 540. *Toll.* 381, 376, 377.) And, perhaps, never applies where there is a will of any of the property. (*Hawley* v. *James*, 5 *Paige*, 451.) It may be remarked, that the alterations in relation to advancements, made by the legislature in the report of the revisers, has made some apparent confusion. (1 *R. S.* 754, § 23, 26. 2 *Id.* 97, §§ 75, 76, 78. 3 *Id.* 605, 645, 6, 2d ed.) Land, or personal estate given by the intestate in his lifetime, to take effect *in presenti* or *in futuro*, was to be brought into hotchpot under the English statute of distributions, except land to the

heirs. But not so, it seems, if given by will, though there was partial intestacy. (*Edwards* v. *Freeman*, 2 *P. Wms.* 440, 1. *Twisden* v. *Twisden*, 9 *Ves.* 434. *Smith* v. *Smith*, 5 *Id.* 722, *note.*) The cases where such gifts have been considered advancements, were those of settlement or some obligation. (2 *Stor. Eq. Jur.* 1109. *Leake* v. *Leake*, 10 *Ves.* 477. *Onslow* v. *Michell*, 18 *Id.* 490.) In case of advancements which, we have seen only extend to what is undisposed of by will, the law steps in and makes, what Ld. Raymond calls, a "parliamentary will." (2 *P. Wms.* 443.)

I have examined this case also with reference to an agreement or understanding which equity has sometimes enforced on the ground of trust. (1 *Stor. Eq. Jur.* § 256. 2 *Id.* § 781.) *Stickland* v. *Aldridge*, (9 *Ves.* 516,) was a devise in fee. The heir filed a bill, alledging that the devise was upon a secret trust or undertaking for purposes contrary to the statute of mortmain ; and the plea of the statute of frauds was ordered to stand for answer, with liberty to except. Lord Eldon seemed quite clear in favor of relief. In *Oddham* v. *Litchford*, one devised to his brother and gave an annuity to another which he would have made a charge upon his real estate, had not the devisee promised to pay it ; and the M. R. charged the estates with the annuity, and his decree was affirmed by the lord keeper. (2 *Vern.* 506.) *Mucklestom* v. *Browne*, (6 *Ves.* 52,) was by the heir at law, and resembled, in some of its features, *Stickland* v. *Aldridge.* So was *Paine* v. *Hall*, (18 *Ves.* 475.) And several other cases contain the same principle. (*Barrow* v. *Greenough*, 3 *Ves.* 152. *Mestaer* v. *Gillespie*, 11 *Id.* 621. *Huguenin* v. *Baseley*, 14 *Id.* 290. *Byrn* v. *Godfrey*, 4 *Id.* 6. *Drakeford* v. *Wilks*, 3 *Atk.* 539. 1 *Jarm. on Wills*, 356.) It stands upon this ground ; that if an heir or personal representative, whose interests would be affected by a will, or the insertion of a clause therein, induce the testator to omit making a provision for the object of his bounty, by assurances that his wishes shall be complied with, the promise or undertaking will raise a trust, which will be enforced in equity, notwithstanding the statute of frauds ; and such an engagement may be entered into, not only by words,

but by a silent assent to the proposition. The undertaking may be express or by implication. (*Barrow* v. *Greenough*, 3 *Ves.* 152.) It requires fraud to overcome the statute. (*Montacute* v. *Maxwell*, 1 *P. Wms.* 620. *Thyn* v. *Thyn*, 1 *Vern.* 296.) And a refusal to perform the trust is fraudulent. (1 *Stor. Eq. Jur.* 256.) But in this case, I think the proof shows a mutual mistake as to the effect of the deed ; and, although it may be morally wrong for the defendant to retain his advantage, there is no evidence that he induced the testator to forbear any alteration of his will, by promise or otherwise.

The bill must therefore be dismissed. But as this suit is analogous to the case of an heir coming into court to know why he is disinherited, I shall not charge the complainant with costs. (*Scaif* v. *Scaif*, 4 *Russ.* 309. *White* v. *Wilson*, 13 *Vesey*, 87. 3 *Dan. Ch. Pr.* 1524.) *Prima facie* the successful party is entitled to costs. But this case is novel in some respects, and, under the peculiar circumstances, I can not say the complainants were wrong in seeking the opinion of the court before making a division.

Bill dismissed.

---

New-York General Term, October, 1850. *Edmonds, Edwards, and Mitchell*, Justices.