Brown *v.* Brown.

———•••———

WILLIAM BROWN *vs.* REYNOLDS H. BROWN and ROWLAND BROWN.

Where, after the execution of a will, the testator sells and conveys the real estate therein devised, this amounts to a revocation of the devise, although the purchaser gives back a mortgage upon the land to secure the payment of the purchase money.

But if the land devised is reconveyed to the devisor, and the title is in him at the time of his death, the same will pass under the will, without any formal republication thereof.

THIS action was tried at the Washington circuit in October, 1852, without a jury. It was brought to recover the undivided tenth part of certain premises described in the complaint. The plaintiff claimed as one of the heirs at law of Jonathan Brown,

deceased. It was admitted that Arnold Brown, Charles Brown, Edward Brown, Leonard Brown, —— Brown, Mary Wells, and Lucy Cranch, and the parties to this action, were the only children and heirs at law of the said Jonathan Brown; and that they were all living at the time of his decease; that he was seised of the premises in question, at the time of his decease, in Sept. 1851; and that the defendants were in possession at the time of the commencement of this suit. The defendants in their answer claimed to own the whole property, which, in the opinion of the court, dispensed with the necessity of further proof of demand or ouster. The plaintiff having rested, the defendants introduced the last will and testament of said Jonathan Brown, dated April 25, 1845, the execution of which was admitted; and it appeared that it had been duly proven before the surrogate of Washington county, as a will of real estate, on the 12th of April, 1852. By this instrument 100 acres of the premises in question were devised to Charles Brown, and by the first clause the testator devised as follows: "I give and devise to my son Reynolds H. Brown all the rest and residue of my real estate, not herein before devised, situate in the town of Granville aforesaid; to have and to hold unto him the said Reynolds H. Brown all the rest and residue of my estate not herein before devised, his heirs and assigns." There was a condition annexed to this clause, but it was revoked by a codicil made in December, 1847. The plaintiff then gave in evidence a deed in fee with covenants of warranty from the testator to William Boies, dated the 19th of February, 1848, for the consideration of $2000, duly acknowledged and recorded, conveying the premises in question. The deed was executed in the presence of the defendant Reynolds H. Brown, who proved its execution. And the defendants gave in evidence a bond and mortgage bearing the same date, from Boies to the testator, for the same consideration, upon the same premises, which was acknowledged on the day of its date, and recorded in the clerk's office of Washington county, on the 21st of February, 1848, and was conditioned to pay $100 annually for ten years, with interest on the whole sum, and the remaining sum of $1000 in two annual payments of $500 each, with interest.

Also an assignment of this mortgage, executed the same day, from the testator to Charles A. Brown, providing and requiring that in case of the death of the testator before the payments were made on the mortgage, the said Charles, who was created a trustee for that purpose, should pay to Reynolds H. Brown such portion of the money secured by the mortgage as would be equal to the land devised to said Reynolds by the fourth clause of the will, and should also pay the other legacies mentioned and bequeathed in the said will. Reynolds H. Brown was one of the subscribing witnesses to this assignment, and proved its execution, on the 22d February, 1848. The defendants further gave in evidence a warranty deed for the same premises, from Boies to the testator, dated the 1st day of April, 1848, reciting that it was a reconveyance of the same property before deeded by the testator to Boies, and that the mortgage executed by Boies to the testator to secure the payment of the purchase money, was canceled and released. This last mentioned deed was acknowledged on the day of its date, and recorded in the clerk's office of Washington county on the 1st day of August, 1848. It was proved by the defendants, under objection, that the testator said, when he gave the deed, he did it to keep costs and lawsuits from coming against him, and that the children should not squander the property, and that it was given to carry out his will and testament. The deed to Boies covered all the real estate of the testator, which consisted of about 140 acres. The premises were proved to be worth $3000, and the annual value $175.

*Bishop & Hopkins*, for the plaintiff.

*I. W. Thompson* and *C. F. Ingalls*, for the defendants.

C. L. ALLEN, J. The first question presented in this case is, whether the execution of the deed by the testator, conveying the same land which he had previously devised in his will, was a revocation of the will. The cases are abundant, that a conveyance made subsequent to a devise of the same land amounts to a revocation; and this is so, although a mortgage is taken back.

for the purchase money, at the same time. (*Platt* v. *Arthur,* 10 *Barb.* 9. *Beck* v. *McGillis,* 9 *Id.* 35. *Rose* v. *Rose,* 7 *Id.* 174.) The case of *Walton* v. *Walton,* (7 *John Ch. Rep.* 258, 272,) goes so far as to declare that by a conveyance of the estate devised the will is revoked, because the estate is altered, *though the testator take back the same estate and by the same instrument.* And though he did not intend to revoke the will, it is revoked upon technical grounds, because the estate is altered. It is said that the testator did not divest himself of the whole estate, and therefore that there was no revocation within sections 47 and 48 of 2 R. S. 65 ; and that by taking back the mortgage he retained his interest in the property. But this point was settled against the defendants in the case of *Beck* v. *McGillis,* already cited. The case of *Adams* v. *Winne,* (7 *Paige,* 97,) was one like the present, where it was held that the provisions of the revised statutes relative to implied revocations of wills of real estate do not extend to the case of an actual conversion into personal property of the real estate devised, subsequent to the making of the will, by selling and conveying the testator's whole interest in the land, and *taking back a bond and mortgage* for the purchase money, or a part thereof. In that case it was contended, as it is here, that by the taking back of the mortgage on the same premises, for a part of the purchase money, *simultaneously* with the execution of the conveyance to the purchaser, the testator's interest was merely *altered,* but not *divested,* and that the case came within the 47th section. The chancellor, however, held otherwise, and decided that the will was absolutely revoked as to the lot sold ; and he decreed the mortgage to be a part of the personal estate. That case, with the others cited, (*see* 1 *Jarman on Wills,* 166 *to* 179,) is decisive on this point, and I am clearly of opinion that the will, as to the real estate sold and conveyed to Boies, was absolutely revoked.

This view brings me to the consideration of another and the only remaining important question in the case. The deed from the testator to Boies was dated the 19th day of February, 1848, and a mortgage was taken for the purchase money at the same time. On the same day of the execution of these papers the

testator executed an assignment of the mortgage to Charles Brown, with conditions that in case of his death before the payments, Charles should pay the legacies in the will, and should pay to Reynolds H. Brown the value of the 40 acres devised in the same will to him. It would appear by this paper that it was intended as a substitute for, and to carry out the will and the intentions of the testator there expressed. After this, and on the first day of April, 1848, Boies conveyed the premises back, by deed of warranty, to the testator, reciting that it was a reconveyance of the same property before conveyed by the testator to Boies, and that the mortgage executed by Boies to the testator for the security of the payment of the purchase money was canceled and released. No part of the mortgage appears to have been paid at this time, and the probability is that the original contract was given up, and that the parties intended to place all things as they were before the execution of the first deed to Boies. There is no evidence, it is true, that the mortgage was ever re-assigned by Charles Brown to his father. Nor is there any evidence that the assignment of the father was ever *delivered* to the son. The fair presumption is that if it had ever been delivered, it was re-assigned or handed back as a re-assignment, (which would have been sufficient for that purpose, if the rights of third persons or of *cestuis que trust* did not prevent,) at the time of the reconveyance and canceling of the mortgage. The plaintiff at all events claims in this action as heir at law, and as such that the estate became reinvested, by this reconveyance, in his father.

After receiving this conveyance, and in September, 1851, the testator died, leaving his will, made in 1845, unrevoked and not altered, except by the codicil in 1847, which merely repudiates a legacy to the plaintiff, left him in the will; and under this will, proved since his death, the defendants claim. The question then is, whether a formal republication of the will was necessary, after the testator became reinvested with his estate; or whether, as he had the same property at the time of his death which he had when he devised it, although the title had once been out of him, it passed to the devisees. The 5th section of

the statute concerning wills of real estate (2 *R. S.* 57,) enacts that every will that shall be made by a testator in express terms, of all his real estate, or in any other terms denoting an *intent* to devise all his real property, shall be construed to pass all the real estate which he was entitled to devise at the time of his death. The will of Jonathan Brown was executed in 1845, long after the revised statutes took effect. If it had been made before 1830, a different question would have been presented, although the testator died after that period. Before the revised statutes, when the legacy given was personal estate, the will was regarded as speaking at the time of the death of the testator, and all the personal property owned by him at his death passed to the legatee, if such was his apparent intent. Not so with regard to real property. A devise of lands was said to resemble a conveyance, and it was held that it could not operate on any other real estate than such as the testator had at the time of making the will. But the section just quoted does away with all distinction between real and personal estate, and the intent of the testator governs in both cases. (*Ellison* v. *Miller,* 11 *Barb.* 332. *Arthur* v. *Arthur,* 10 *Id.* 9. *Pond* v. *Bergh,* 10 *Paige* 140, 149.) In this last case, the chancellor, in speaking of the 5th section, remarks, "This statutory provision proceeds upon the ground that in a general devise of all his real estate the testator has reference to the real estate as it shall exist at the time of his death, and that such a construction of the testamentary disposition of his property will be but carrying his intention into effect. Upon the same principle, therefore, if he devises all the real estate of a particular description of which he shall die possessed, or which shall belong to him in a particular town or county at the time of his death, although the devise would not be within the words of this section, it not being a general devise of all his real estate, I think it would be clearly within the spirit and intent of this statutory provision."

The case of *Parker* v. *Bogardus,* (1 *Seld.* 309,) it appears to me, settles this question. It decides in so many words, that a will *executed* before the revised statutes took effect, though the testator died afterwards, disposes only of such estate as he had

at the time of its execution; but if made afterwards, all lands acquired after its execution pass to his devisee. That is the law as declared by the highest tribunal in the state; and by that decision I am of course bound, if applicable to the case under consideration. The only distinction that can be claimed between the two cases is that here was a *revocation* by conveyance of *the very land devised* by the testator, and that, therefore, a formal republication, after he received back the title to the same land, was necessary. I hardly think this distinction can obtain. The great object of the section was to carry into effect the *intent* of the testator, expressed in the will or gathered from a fair construction of its provisions. The estate was indeed altered by the conveyance of the property; but, after all, it was another method adopted by the testator of effecting and carrying out the objects of his will, which he declared in the instrument assigning the mortgage to his son Charles, who was the principal devisee. He receives back the title to the same property, and dies without altering or revoking though not formally republishing his will. He recites in it that he has given and advanced to his sons Edmund and Arnold all he considered it his duty to give to them, and declares them excluded from any further bounty and benefit from his estate. He provides for the support of others of his family, and expressly excludes by his codicil the plaintiff from any share of his estate, cutting off by that instrument which was a republication of his will, (7 *Hill,* 346,) a legacy of $100 bequeathed to him in the will, and showing in the clearest terms that he did not intend he should share any portion of his estate. Can any thing be more manifest than that his intention at the time of his death was that his will should be fully carried into effect, as it was originally made and executed? Can it be doubted for a single moment that he supposed and believed that, having received back the title to the lands devised, they would pass as he had directed in his will? But one answer, it appears to me, can be given to these questions. I presume his intention is not doubted by the plaintiff, but that he rests his claim entirely on the legal propositions put forth by his counsel. These, I think, are overruled by the statute and

the decisions under it, already cited, and that the equity of the case harmonizes with the law, in favor of the defendants.

Another view presented by the counsel for the defendants, was that the assignment of the mortgage of William Boies to Charles Brown, and creating him a trustee for the legatees in the will, vested the legal title in him, and that he could not reassign the mortgage without the consent of the *cestuis que trust*. There is no evidence, as before remarked, that there was any delivery of this assignment. If it was fully delivered there would probably be nothing in this view of counsel if the trust was a valid one, and if the case of *Gilchrist* v. *Stevenson*, (9 *Barb.* 9,) is to be regarded as law, and it has not been reversed. Here, however, the rights of the cestuis que trust are fully protected. But I do not pass upon this point, considering the conclusions at which I have arrived as fully decisive of the case.

The complaint must be dismissed, with costs.

[WASHINGTON SPECIAL TERM, October 19, 1852. *C. L. Allen*, Justice.]