United States Security Trust Company, as Trustee under the Last Will and Testament of Jane G. Taintor, Deceased, Plaintiff, *v.* Antonio Petrillo and Others, Defendants.

Supreme Court, Montgomery County, March 10, 1927.

Wills — construction — testatrix gave all her interest in estate which she received from estate of father and mother, to three sisters or survivor, in fee simple as tenants in common — testatrix and another sister subsequently gave property to two other sisters — testatrix thereafter executed later will containing same clause — property thereafter descended to testatrix and defendant's grantor upon death of other two sisters — half interest in property was so held by testatrix at her death — under Decedent Estate Law, § 14, half interest held by testatrix passed to defendant's grantor, surviving sister — will speaks as of death of testatrix — deed of surviving sister passed good title to property.

Plaintiff's testatrix and her three sisters came into the possession of real property left by their mother, who died intestate. Plaintiff's testatrix, by a former will,

gave all her one-fourth interest in the estate to three sisters " who shall survive me, absolutely and in fee simple, as tenants in common of said real estate * * * or all of said property, to the survivor should but one of said sisters be living at the time of my death." Later, testatrix and another sister gave their interest in the property to the other two sisters. While the other two sisters held said property, the testatrix executed the will in question, which contained the same clause heretofore recited. Still later, the property in question descended to the testatrix and the defendant's grantor, the surviving sister, as tenants in common, and it was so held at the time of testatrix's death. Under section 14 of the Decedent Estate Law, the one-half interest of the testatrix in the property in question, although not owned by testatrix at the time her will was drawn, passed by said will to defendant's grantor, since the will speaks as of the date of the death of testatrix, and at that time she did own a one-half interest in said property.

Accordingly, the deed of the surviving sister passed a good title to the entire property.

ACTION for partition involving construction of will.

*Myers & Searle*, for the plaintiff.

*Harry V. Borst*, for the defendants Petrillo.

*Dwyer & Dwyer*, for the defendant Catherine C. Dealy.

*Carl S. Salmon*, for the defendant Leo Kahn.

HEFFERNAN, J. This is an action for the partition of real property located on Church street in the city of Amsterdam. The facts are not in dispute. The controversy here is as to whether the plaintiff has any interest in the premises. This depends upon the construction of paragraph 2 of the will of Jane G. Taintor, reading as follows:

" I give, devise and bequeath all my right, title and interest in the real estate located in the Town of Columbia, Connecticut, and in all the personal property, except money and securities which shall be in the camp on said real estate at the time of my death, and all my right, title and interest in that part of my estate, both real and personal, located in the Town of Amsterdam, County of Montgomery, and State of New York, which I received from the estates of my father and my mother to those of my sisters, H. Kinney Bennett, Delia B. Kline and Anna F. Bennett, who shall survive me, absolutely and in fee simple, as tenants in common of said real estate and as equal sharers of said personal estate, or all of said property, to the survivor should but one of said sisters be living at the time of my death."

The plaintiff, a banking corporation organized under the laws of the State of Connecticut, is the executor and trustee of the will and by the 4th paragraph thereof the residuary estate is devised and bequeathed to it, in trust, for the purposes therein specified,

and it is under that clause that the plaintiff alleges that it is the owner in fee of a one-half interest in such premises and that the defendant Petrillo is the owner of the remainder.

On January 18, 1861, Almiria Bennett acquired title to this property, consisting of a lot of land upon which was erected a one-family house. From the time of its acquisition the owner and her husband used these premises as a homestead until their respective deaths. The wife survived her husband and she died intestate on January 1, 1894, leaving four daughters, Jane, Delia, Hannah and Anna, the sole issue of this union. In 1869, Jane married Henry E. Taintor and, thereupon, removed to Hartford, Conn., where her husband died in 1904. Delia was united in marriage to one Kline and established a residence elsewhere. Hannah and Anna never married and occupied the parental home until their decease. At the time of her death Mrs. Bennett was also seized of the real property known as 17 Market street in the city of Amsterdam. All the real estate descended to the daughters, each taking an undivided one-fourth interest therein. The only personal property which came to the children from their parents was the household furniture.

On June 14, 1914, Jane and Delia made a gift of their interest in the premises involved in this litigation to their sisters, Hannah and Anna.

On March 2, 1922, Hannah died, leaving a will by the terms of which she devised all her interest in this property to her sister Anna. Anna died intestate on October 1, 1922, and upon her death title to these premises vested in Jane and Delia, each becoming the owner of an undivided one-half interest therein.

On June 6, 1921, Jane executed her last will and testament. It is conceded that paragraph 2, in dispute, is copied from a former will executed prior to June 14, 1914, being the date when Jane and Delia transferred their interest in these premises to their sisters.

On April 11, 1925, Jane and Delia disposed of the Market street property.

The relationship existing among these sisters throughout their lives was extremely cordial and friendly. The camp, spoken of in this paragraph of the will, was common property and was occupied by all as a place of recreation. After marriage Jane and Delia frequently visited their sisters. About 1920 they returned to Amsterdam with the intention of spending their declining years in the old homestead. Jane was actually living there when this will was made and her death occurred at that place on June 26, 1925. Her will was admitted to probate in the Probate Court

2

at Hartford, Conn., on July 2, 1925, and an exemplified copy thereof was filed in the office of the surrogate of the county of Montgomery and the will recorded in the office of the clerk of that county on October 26, 1925. Her total estate amounted to $57,000, including her interest in this property which had a net valuation of $3,000. Practically all the property which she owned came to her from the estate of her husband with the exception of the Amsterdam property which came to her from her immediate family. The remaindermen named in the 4th paragraph of her will are all of the blood of her deceased husband.

In the description of the property in Jane's will which came to her from her father and mother, she locates it in the town of Amsterdam. It is admitted that neither Jane, nor her parents, ever had title to any real estate in the town of Amsterdam. When her mother acquired the premises in question, they were part of the then village of Amsterdam. Later, by legislative act, the village was incorporated as, and is now, part of the city of Amsterdam.

On October 24, 1925, Delia, on the theory that she succeeded to Jane's interest in this property under the will of the latter, conveyed the entire premises to the defendant Petrillo. Petrillo and wife, on October 31, 1925, delivered to the defendant Catherine C. Dealy a mortgage on the premises to secure a loan of $10,000. On January 6, 1926, the same defendants gave to the defendant Kahn a mortgage on the same property to secure a loan of $2,000.

The defendants assert that upon the death of Jane, Delia became the absolute owner of this property and they base that contention upon section 14 of the Decedent Estate Law, which reads as follows:

" Wills of real estate, how construed. Every will that shall be made by a testator, in express terms, of all his real estate, or in any other terms denoting his intent to devise all his real property, shall be construed to pass all the real estate, which he was entitled to devise, at the time of his death."

At the time of the making of her will the decedent did not own any portion of the homestead property. She had theretofore given to her sisters the one-fourth interest which came to her upon the death of her mother. At the time of her death, however, she was vested with a half part thereof which came to her as an inheritance from her deceased sister, Anna. In construing her will it is, therefore, necessary to determine the effect of section 14 of the Decedent Estate Law quoted above.

At common law a devise, although general in its terms, passed the title only to real property which the testator owned at the time of its publication and did not carry that which he acquired

subsequently to its execution. As to personalty the rule was otherwise. The rule of the common law in this State was abrogated by statute (2 R. S. 57, § 5; R. S. pt. 2, chap. 6, tit. 1, art. 1, § 5) which is the source of our present section 14 of the Decedent Estate Law. It makes the devise to speak as of the time of the testator's death and all his estate, which he then owns and could devise, is comprehended in the disposition. It is interesting to note that the English Statute of Wills (32 Henry VIII, chap. 1, and 35 Henry VIII, chap. 5) became a part of the law of this State upon the adoption of the Constitution of 1777, and was subsequently re-enacted by statutes passed in 1787 and in 1813. Curiously enough, prior to the reign of Henry VIII, there was, in general, no power at common law in England to make a will, although the disposition of estates by that method, however, had been preserved in particular districts and by special custom from the time of the Saxons. According to the principles of the ancient common law of England, lands might be devised, but this was prohibited after the introduction of the feudal system. The want of capacity to transfer or receive the freehold was, by feudal policy, engrafted upon the system of jurisprudence prevailing in that country at the time of the Conquest. It was an incident to feudal tenures and as long as the relations between the landlord and tenant retained the spirit of their original establishment the alienation of the feud was inconsistent with the obligations of the tenant to his lord. (40 Cyc. 996, 997; *McCartee* v. *Orphan Asylum Soc.*, 9 Cow. 437; *Matter of Fox*, 52 N. Y. 530.)

At common law a will was held to be inoperative upon real estate of which the testator was owner at the time of the making of the will and afterwards sold, repurchased and died seized. (*Brown* v. *Brown*, 16 Barb. 569.) Although for some purposes a will is considered as speaking from the date of its execution, under our statute it speaks from the death of the testator and must be construed as operating according to the state of things then existing unless the language, by a fair construction, indicates an intention that it is to take effect at some other time, either at the date of the will or at some future time. (40 Cyc. 1424, 1425; *Simpson* v. *Trust Company of America*, 129 App. Div. 200; affd., 197 N. Y. 586.) Under the provisions of our statute it was not necessary for the testatrix in this case to refer particularly to real property owned by her at the time of her death, but if her will shows, at the time of making it, a present intention to dispose of all her real estate. then, by virtue of the statute, the will carries all after-acquired property. (*Byrnes* v. *Baer*, 86 N. Y. 210; *Heck* v. *Volz*, 14 N. Y. St. Repr. 409; affd., 120 N. Y. 663; *Eakin* v. *Knabe*, 31

Misc. 221; *Carley* v. *Harper*, 219 N. Y. 295; *Brown* v. *Brown,* *supra;* *Lent* v. *Lent,* 24 Hun, 436; *Schuck* v. *Shook,* 10 N. Y. Supp. 935; *Hodgkins* v. *Hodgkins,* 123 App. Div. 110; *Matter of Granniss,* 142 Cal. 1; *Garrison* v. *Garrison,* 29 N. J. L. 153; *Brown* v. *Hamilton,* 135 N. C. 10; *Durboraw* v. *Durboraw,* 67 Kans. 139.) A single quotation from the authorities cited will suffice to show the judicial interpretation which applies. In *Carley* v. *Harper* (*supra*) the testatrix owned an undivided one-half of premises called parcel C, an undivided one-half of the premises at Hempstead on which she resided (which clearly enough included parcels A, B and D), the whole of parcel F on Washington street and an undivided half of parcel E. She devised to her sister, Julia A. Harper, " *all my* *right, title and interest* " in parcel C and in parcels A, B and D and " *the whole of* " parcel F. By the residuary clause she gave one-half of the rest, residue and remainder of her property to her said sister, and the other half to Sarah E. Skillin and her children. Three years after she acquired the other one-half interest in parcels A, B and D from her sister Julia. Her interest in parcel E was disposed of before her death. It was there held that all the real estate which testatrix owned at the time of her death passed under the particular devise and did not pass under the residuary clause of the will. In the opinion it was said: " In England by the 24th section of the Wills Act (7 Wm. IV and 1 Vic. ch. 26) it is provided that ' every will shall be construed with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator unless a contrary intention shall appear in the will.' (28 Halsbury's Laws of England, 691; *Saxton* v. *Saxton,* L. R. 13 Ch. Div. 359.) The rule has been formulated somewhat differently in this State. A devise of real estate, universal in its terms, would carry after-acquired land without language pointing to the period of testator's death, but in the absence of unlimited terms in the will there must be language which will enable the court to see that the testator intended it to operate upon real estate which he should afterwards purchase. (*Lynes* v. *Townsend,* 33 N. Y. 558.) That is the canon of construction we shall apply. In 1843 Chancellor WALWORTH in *Pond* v. *Bergh* (10 Paige Ch. 140, 150) failed to find such language in the will of the testator who devised all his ' real estate lying and being in the county of Schoharie.' He said ' there is good reason to suppose he means to speak in reference to the lands he has already acquired there; ' and on this supposed actual intention he held that subsequently acquired lands in Schoharie County did not pass under the clause quoted. But the language of testatrix does enable the court to see what her intention was.

She knew the difference between the words ' one-half ' and ' all my right, title and interest,' and ' all the interest *that I now possess.*' If she had limited her devise to the one-half interest in such premises *that she then owned,* one-half of the subsequently acquired one-half would have gone from her sister to the Skillins. She had said in her will that ' it is my wish that the homestead in which I now reside shall be retained by some member of my family as long as possible.' It was more consonant with that wish to give it all to her sister if she acquired title to the whole before her death, than to leave one-half of it to be disposed of by the residuary clause. The draftsman of the will, by a discriminating use of language, in few but apt words expressed the intention of the testatrix that her sister should take not only the one-half interest in the homestead that testatrix then owned but also all the interest she should own therein when she died. (*Quinn* v. *Hardenbrook,* 54 N. Y. 83.)

" The provisions for S. Amelia Skillin, Florence Skillin Cloyd, Simeon D. Skillin and Sarah E. Skillin in the eighth, ninth and tenth clauses of the will are for the legatees individually and not as a class. (*Matter of Kimberly,* 150 N. Y. 90.) "

The duty of the court is to interpret, not to construct; to construe the will, not to make a new one. (*Herzog* v. *Title Guarantee & Trust Co.,* 177 N. Y. 86; *Tilden* v. *Green,* 130 id. 29, 51.) Where the language of the will is doubtful or ambiguous, parol or extrinsic evidence is admissible for the purpose of assisting the court in ascertaining its meaning. (40 Cyc. 1429; *Brown* v. *Quintard,* 177 N. Y. 75.) In the construction of wills the testamentary intention has paramount potency. It seems to me that the testatrix, in the preparation of this will, evidently had two desires: one to preserve to the members of her immediate family the property which came to her from that source; the other to make provision for the relatives of her deceased husband out of the property which came to her from his estate. It is important to remember in the instant case that the doubt arises as to the intention of the testatrix concerning the devolution of her interest in property which was not only her home but the home of her sisters and her parents. It was unquestionably the intention of the testatrix here to devise to her surviving sister or sisters all her interest in the homestead property. If the words in the disputed clause " *which I received from the estates of my father and my mother* " were eliminated, it could not then be seriously questioned that the provisions of the will would have included the property which the decedent inherited from her sister. In other words, if the will were silent as to the source from which testatrix's title was obtained,

there would be no basis for plaintiff's claim. The language used by the testatrix " *all my right, title and interest in that part of my estate, both real and personal, located in the Town of Amsterdam, County of Montgomery and State of New York,*" is universal in its terms. The real question here is, it seems to me, are the words " *which I received from the estates of my father and my mother* " descriptive of the property devised or intended as a limitation of the devise? If plaintiff's construction is adopted, the old home, instead of going to the surviving sister, will go, not to those of the blood of the testatrix, but to those of the blood of her husband. Such a construction, especially in view of the character of the property and the use which was previously made of it, as I view it, is illogical and would lead to a result which the testatrix never contemplated. The rule is clear that in construing wills the court may insert or disregard words, phrases and punctuation and may even transpose sentences in order to ascertain and determine the intention of the testator. (*Matter of Farmers' Loan & Trust Co.,* 189 N. Y. 202; *Eidt* v. *Eidt,* 203 id. 325.) Having in mind that the cardinal rule of construction is to ascertain and determine the intention of the testatrix and in doing that to consider all the surrounding facts and circumstances, it seems to me that the words used by the testatrix in her will, as to the source from which her title was obtained, are not words of limitation and were not used by the testatrix with the intention of negativing the preceding gift of all her " *right, title and interest* " in her estate at Amsterdam, and that such language is merely descriptive or explanatory and should be disregarded. By another familiar rule of law, where any ambiguity exists in a will, the court is also required to give it such a construction as favors the heirs at law or next of kin in preference to disinheritance or to strangers, or persons not so closely related to the testatrix, and the heirs at law should not be disinherited by mere conjecture but only by express words in the will or by necessary implication arising therefrom. (40 Cyc. 1412.) I am, therefore, satisfied that upon the death of Jane her interest in these premises vested in her surviving sister.

The two principal cases cited by the learned counsel for the plaintiff, when analyzed, are not in conflict with this view. *Pond* v. *Bergh* (10 Paige, 140) construed a will made in 1830, that being the year of the adoption of the Revised Statutes, and the later decisions on the subject, particularly *Carley* v. *Harper* (*supra*) show that the authority of that case should not be extended but should be limited to the state of facts there shown. In that case the testator devised to his four sons all his real estate in the county of Schoharie, subject to the payment of certain legacies to other

children and to some grandchildren. In drafting his will he, undoubtedly, took into consideration the property he then had and the value of it and having this in mind, he devised his real estate subject to the payments mentioned. He evidently intended to make an equitable distribution of his property among the objects of his bounty and Chancellor WALWORTH was convinced that such was his intention, and that, because of that, it would not be fair or equitable to hold that the after-acquired real property should go to the four sons.

In *Gleason* v. *Norton* (226 N. Y. 679) no opinion was written by the Court of Appeals, the Appellate Division or the trial court, and the statement of facts in connection with the printed report of this case is very unsatisfactory. The appeal record, which I have examined, shows that the clause of the will in controversy there reads as follows:

" *Second:* I give and bequeath to my brother William Gleason all of my right, title and interest in and to the real estate situate on First and Tulip Streets in the said Village of Liverpool, Town of Salina, County of Onondaga, New York, *and being the interest bequeathed to me by my brother Orson C. Gleason, consisting of a brick store building and two or more other buildings situate on said premises*, together with all appurtenances thereunto belonging."

In that case it appeared that the testatrix owned a one-quarter interest in certain property which was devised to her brother. Subsequently she acquired an additional one-quarter part and the court held that the second quarter passed under the residuary clause. It should be noted in the language of that will that the property was described in detail and that it specifically limits the devise to the " *interest bequeathed to me by my brother Orson C. Gleason.*" The words of the testatrix were not referring to the location of the property but were words actually limiting the nature and extent of the gift in property described with great particularity. That case is clearly distinguishable from the case at bar where the language of the will, as well as the surrounding circumstances, show an intent on the part of the testatrix to devise all her interest in her Amsterdam property to her surviving sister or sisters.

For these reasons I am convinced that the plaintiff has no interest in the premises in question and that the defendants are entitled to a judgment dismissing the complaint, with costs.