SCHENECTADY GENERAL TERM, May, 1850.  *Paige, Willard, Hand, and Cady*, Justices.

## GILCHRIST and others *vs.* STEVENSON.

On the 1st of April, 1839, D. S., being the holder of two bonds and mortgages given by H. and W., by indorsements on the backs thereof, assigned the same to J. McD., such assignment being expressed therein to be in accordance with a certain written contract executed by J. McD. " for the benefit of children." In an instrument in writing executed by J. McD. and three of his children, on the 22d of Oct. 1839, and witnessed by W. S., the defendant, it was recited that D. S. had assigned to them the two bonds and mortgages given by H. and W., and that the sums due on the said bonds and mortgages were to be divided among the children of the said J. McD.; and it was agreed that the children of the said J. McD. should respectively pay to the trustees of the N. A. congregation, annually, certain specified sums; and that the bonds and mortgages should be left with W. S., the defendant, to collect the sums payable thereon, and to pay the same over to the persons interested therein. J. McD. bound himself and his heirs, &c. for the faithful performance of the contract for all his children who were minors. By another instrument in writing, dated Oct. 21, 1839, signed by the defendant, he acknowledged that he had received the

Gilchrist *v.* Stevenson.

two mortgages, and he agreed that when they were collected he would pay over the moneys in accordance with an agreement executed by J. McD. and his children. In pursuance of these agreements the bonds and mortgages were delivered to the defendant. On the 9th of April, 1840, J. McD. re-assigned the mortgages *to D. S. In August, 1847, D. S.* made a will, by which he gave legacies to the children of J. McD. and other persons, and gave the residue of his estate to the defendant, and appointed him one of his executors. Under this will the defendant claimed to hold the bonds and mortgages in question. In an action by the children of J. McD. against the defendant, praying that the defendant might account with them for all sums of money received and collected on the mortgages since their assignment to him by D. S., and that he might be directed to collect all sums remaining unpaid, thereon, and to account and pay over to the plaintiffs their proportions of the same;

*Held* 1. That the assignment of the bonds and mortgages by D. S. to J. McD., and the execution *of the instrument in writing signed by J. McD. and his* three adult children, and the delivery of the bonds and mortgages to the defendant under an agreement that they should be so delivered, and that he should collect the moneys due thereon and pay over the same to the plaintiffs, constituted a valid and perfect gift of the bonds and mortgages to the plaintiffs; and that the defendant thereby became their trustee to collect the moneys due upon the mortgages, and to pay the same over to them.

2. That the payment to the N. A. church was not made a condition precedent to the gift to the plaintiffs; that payment resting in covenant only, and the gift being complete and perfect.

3. That the defendant being a trustee of the plaintiffs, could not discharge himself of the trust, except by an order of the supreme court, or with the consent of all the cestuis que trust.

4. That the re-assignment of the mortgages, by J. McD. to D. S. and the delivery of them to the latter by the defendant, were breaches of trust, both in the defendant and in J. McD. That D. S. having parted with his whole title to, and all dominion over, the mortgages, by an absolute and irrevocable gift of them to the plaintiffs, he had no right to demand a re-assignment; *and that the defendant,* having full notice of the plaintiff's interest, and having agreed to receive such mortgages as agent and trustee, and to collect and pay over to them the moneys due thereon, violated his duty in delivering them up to D. S.

5. That D. S. by taking a re-assignment of the mortgages, and accepting a re-delivery of them with full knowledge of the equitable title of the plaintiffs thereto, also became a trustee, subject to the same obligations as were J. McD. and the defendant, and was bound to pay over to the plaintiffs their share of the moneys received by him on such mortgages.

6. That the plaintiffs might proceed against the defendant alone, and hold him responsible for the whole amount due on *the mortgages when he received them;* without uniting with him as defendants J. McD. or the representatives of D. S.

7. That the bonds and mortgages did not pass under the will of D. S.; and that the defendant, as his residuary legatee and executor could not claim any title to them.

8. That the plaintiffs were not estopped from claiming their shares of the bonds and mortgages by accepting the legacies given to them in the will of D. S.

The denial by a plaintiff, in his reply, of any knowledge or information of a matter alledged in the defendant's answer, sufficient to form a belief, puts such allegation in issue, and casts upon the defendant the burthen of establishing it by proof.

Where there are several trustees who unite in a breach of trust, they are all equally liable to the cestuis que trust. And the latter, in seeking relief against the breach of trust, may proceed against all or either of the trustees.

THE plaintiffs in their complaint demanded, as relief, that the defendant, William Stevenson, should account with them for all sums of money received and collected on two bonds and mortgages, since their assignment by Daniel Stevenson, and which the plaintiffs alledged were assigned by said Daniel Stevenson for their benefit; and that the defendant should be directed to collect all sums remaining unpaid on such bonds and mortgages, and to account and pay over to the plaintiffs their proportions of the same. By an indorsement on the back of one of the mortgages which was given by E. Hills to D. Stevenson, dated April 1, 1839, D. Stevenson assigned the mortgage to John McDougall, such assignment being expressed therein to be in accordance with a certain contract in writing. And by an indorsement on the other mortgage, which was given by H. and S. Waller to D. Stevenson, dated March 21, 1839, D. Stevenson assigned such mortgage to the said John McDougall; such assignment being expressed therein to be in accordance with a certain contract agreed to by John McDougall "for the benefit of children." In an instrument in writing dated Oct. 22, 1839, witnessed by the defendant, and executed by the said John McDougall and his children James McDougall, Andrew McDougall and Mary Ann McDougall, it was recited that Daniel Stevenson had assigned to them the two mortgages given by Hills and the Wallers, and that the sums due on said mortgages were to be divided among the children of said John McDougall, (specifying the proportion of each.) And in and by said instrument it was agreed that the sons and daughter of the said McDougall should respectively pay to the trustees of the North Argyle congregation annually certain sums specified in such instrument.

Gilchrist *v.* Stevenson.

And in and by the said writing it was further agreed that the mortgages should be left with the defendant to collect the sums payable on such mortgages, and to pay the same over to the persons interested therein. And it was provided in such instrument that if the trustees of the said church should think proper they might ask further security for the payment of the sums directed to be paid to said church. And by said instrument John McDougall bound himself and his heirs, &c. for the faithful performance of the contract for all his children who were not of age. The said instrument in writing was drawn up by the said Daniel Stevenson. This instrument was the only writing or contract made and executed in relation to the bonds and mortgages. By an instrument in writing dated Oct. 21, 1839, signed by the defendant, the defendant acknowledged that he had received the two mortgages, given by Daniel Stevenson to John McDougall for the benefit of the children of the latter and of the North Argyle church; and the defendant by such instrument agreed that when the mortgages were collected he would pay over the moneys in accordance with an agreement executed by John McDougall and his children. The said bonds and mortgages, in pursuance of said agreements, were delivered to the defendant. On the 9th of April, 1840, John McDougall re-assigned the bonds and mortgages to Daniel Stevenson. Daniel Stevenson made a will dated August 4th, 1847, and in such will gave legacies to the children of John McDougall, who were nephews and nieces of said Daniel Stevenson, and after making various devises and bequests he gave the residue of his estate remaining after the payment of his debts and legacies, to the defendant, and appointed him one of his executors. Daniel Stevenson died on the 8th of August, 1847. The defendant claimed to hold the bonds and mortgages under the will of Daniel Stevenson. The plaintiffs, Mary Ann Gilchrist, Jane Hall, and Daniel and William McDougall, were children of John McDougall. The plaintiffs, being nonsuited on the trial at the circuit, now moved for a new trial.

*E. H. Rosekrans* and *Wm. Hay*, for the plaintiffs.

*I. W. Thompson* and *C. L. Allen*, for the defendant.

*By the Court*, PAIGE, P. J.   The assignment of the bonds and mortgages against E. Hills and H. and S. Waller, by Daniel Stevenson to John McDougall, the father of the plaintiffs Mrs. Gilchrist, Mrs. Hall, and Daniel and William McDougall, and the execution of the instrument in writing executed by John McDougall and his three adult children, and the delivery of the bonds and mortgages to the defendant, under an agreement that they should be so delivered, and that he should collect the moneys due thereon and pay over the same to the persons declared by such instrument to be interested therein, constituted a valid and perfect gift of the bonds and mortgages to the children of John McDougall.  Delivery is essential, both at law and in equity, to the validity of a gift of personal property. The delivery may be directly to the donee, or to a third person for him, or for his benefit.   The delivery must be absolute and unconditional.   When the gift is perfect it is irrevocable. (2 *Kent's Com.* 438, 440.   4 *Id.* 455.   *Mickles* v. *Colvin*, 4 *Barb. Sup. C. Rep.* 304.)   To make a perfect delivery, the donor must part not only with the possession but also with the dominion of the property.   (2 *Kent's Com.* 439.)   In the assignments in this case by Daniel Stevenson, of the bonds and mortgages in question to John McDougall, it is stated that they are made in accordance with a certain contract.   The contract referred to must have been the one of the date of Oct. 22, 1839 ; for that was the only contract ever made by the parties in relation to the bonds and mortgages.   In one of the assignments it is expressed to be for the benefit of children ; meaning undoubtedly the children of John McDougall.   The contract of the date of Oct. 22, 1839, was drawn up by the donor Daniel Stevenson, and it expressly declares that the moneys due on the bonds and mortgages are to be divided among the children of John McDougall.   And the adult children, and John McDougall in behalf of the minor children, in consideration of the gift

Gilchrist *v.* Stevenson.

of the said bonds and mortgages, agree to pay certain annuities to the North Argyle church. By this contract it is also agreed that the bonds and mortgages shall be left with the defendant, and that he shall collect the moneys due thereon, and pay over the same to the persons entitled thereto. The defendant accepted the trust thus confided to him, and by an instrument in writing signed by himself, he acknowledged the receipt of the mortgages, for the benefit of the children of John McDougall and the North Argyle church, and agreed when the moneys were collected to pay over the same, in accordance with the agreement aforesaid executed by John McDougall and three of his children. The bonds and mortgages, in pursuance of these agreements, were delivered to and accepted by the defendant. By the assignments to John McDougall, and by these agreements, and the delivery of the bonds and mortgages to the defendant, Daniel Stevenson parted not only with the possession of, but also with all dominion over the bonds and mortgages; and they became the property of the children of John McDougall, and the defendant became their trustee to collect the moneys due on the mortgages, and to pay the same over to them and to the North Argyle church. The agreement of the date of the 21st of Oct. 1839, signed by the defendant, created the relation of trustee and cestuis que trust between him and the children of John McDougall. Lord Chancellor Thurlow says that it is a maxim which he takes to be universal, " that wherever persons agree concerning any particular subject, that, in a court of equity, as against the party himself, and any claiming under him voluntarily or with notice, raises a trust." (*Legard* v. *Hodges*, 1 *Ves. jun.* 477.)

The payment to the North Argyle church was not made a condition precedent to the gift to the children of John McDougall. That payment rested in covenant only. The gift was complete and perfect, and the remedy of the church to enforce payment of the annuities due to it, was by an action on the covenant, or by a suit to compel specific performance of the agreement to give the church further security for the payment of the annuities. No other trust or conditions are shown, except those

contained in the two agreements of the dates of the 21st and 22d
Oct. 1839.   The allegations in the answer of the defendant, in
relation to other conditions, were neither established by proof
nor admitted by the plaintiffs' reply.   The denial in the reply, of
any knowledge or information thereof, sufficient to form a belief,
put such allegations in issue, and cast on the defendant the
burden of establishing them by evidence.   That such a denial
creates an issue of fact has been decided by this court during
the present term.   The defendant being a trustee of the children
of John McDougall, could not discharge himself of the trust, ex-
cept by an order of the supreme court, or with the consent of all
the cestuis que trust.   (11 *Paige*, 314.   4 *John. Ch. Rep.* 137.
1 *Id.* 339.)

   The re-assignment of the mortgages by John McDougall to
Daniel Stevenson, and the delivery of them to the latter by the
defendant, were breaches of trust both in the defendant and in
John McDougall.   Daniel Stevenson had no right to demand a
re-assignment.   He had parted with his whole title to, and all
dominion over the mortgages.   He had made an absolute gift
of them to the children of John McDougall ; and the gift was
irrevocable.   The defendant had full notice of the interest of
the children of John McDougall in the mortgages.   He was a
witness to the agreement which declared the nature and extent
of that interest, and he had agreed to receive such mortgages as
agent and trustee, and to collect the moneys due thereon, and
pay the same over to such children and to the North Argyle
church.   After full knowledge that the children of John Mc-
Dougall were the equitable owners of the mortgages he delivered
them up to Daniel Stevenson.   This was a breach of trust in
the defendant.   Daniel Stevenson taking a re-assignment of the
mortgages, and accepting a re-delivery of them with full know-
ledge of the equitable title thereto of the children of John Mc-
Dougall, also became a trustee, subject to the same obligations
as were John McDougall and the defendant.   And he was obli-
gated to pay over to such children their full share of the moneys
received by him on such mortgages.   (2 *Story's Eq. Juris. sec.*
1257.   *Murray* v. *Ballou*, 1 *John. Ch. Rep.* 565.   *Id.* 339.

4 *Id.* 137.)   But the plaintiffs are not compelled to resort to the estate of Daniel Stevenson for satisfaction.   They may proceed against the defendant personally, and hold him responsible for the whole amount due on the two mortgages when he received them.   He, by his breach of his trust, has made himself personally liable to the plaintiffs.

The plaintiffs can proceed against him alone, without uniting with him as a defendant John McDougall.   Where there are several trustees who unite in a breach of trust, they are equally liable to the cestuis que trust.   And the latter, in seeking relief against the breach of trust, may proceed against all or either of the trustees.   (*Bailey* v. *Inglee*, 2 *Paige*, 279.   4 *Id.* 23.   *Wilson* v. *Moore*, 1 *Mylne & Keen*, 126.   3 *Swans.* 74.)   The bonds and mortgages in question did not pass under the will of Daniel Stevenson.   He had no interest in them, to bequeath. And the defendant, as his residuary legatee and executor, can claim no title to them.   Trust property, although it has been sold or assigned by the trustee, so long as it can be traced and distinguished from other property, may be claimed by the cestuis que trust, whenever the purchaser purchases with notice of the trust.   (1 *John. Ch. Rep.* 118.   *Kip* v. *Bank of N. York.* 10 *John.* 63.   1 *John. Ch. Rep.* 63.   4 *Id.* 137.)

The plaintiffs are not estopped from claiming their shares of the bonds and mortgages by accepting the legacies given to them in the will of Daniel Stevenson.   Daniel Stevenson did not stand *in loco parentis* to the children of John McDougall ; and the doctrine of satisfaction or ademption has therefore no application in this suit.   It is only where a parent, or other person *in loco parentis*, bequeaths a legacy to a child or grandchild, and after, in his lifetime, gives a portion to or makes a provision for the same child or grandchild, that under certain circumstances such portion or provision will be deemed a satisfaction, or an ademption, of the legacy.   (2 *Story's Eq. Juris.* §§ 1111, 1116, 1117, 1118.)

The defendants must account to the plaintiffs for their shares of all the moneys paid on the bonds and mortgages since the 22d of Oct. 1839, the date of the agreement executed by John

---

McDougall and three of his children, with interest from the time of such payments. And the plaintiffs are entitled to a judgment directing the defendants to collect the sums remaining unpaid on such bonds and mortgages, and to account for and pay over to the plaintiffs respectively their proportion thereof. The judgment of nonsuit must be set aside and a new trial ordered.

