JOHN G. MEIGGS, RESPONDENT, v. HENRY E. MEIGGS AND OTHERS, INFANTS, IMPLEADED WITH JOSEPH S. SPINNEY AND OTHERS, APPELLANTS.

*Trust — complete delivery essential to — Principal and agent.*

A trust once absolutely created by the act of the settlor is irrevocable, as to him, even though the beneficiaries may have had no notice of its existence.

In order to sustain a trust, it must be shown that a complete and valid delivery of the subject thereof has been made, and that no power is left in the settlor to revoke or annul such delivery, or to defeat its effect by making any other or different disposition of the property.

An agent delivered property of his principal to a third person, taking a receipt therefor, in which, without authority from the principal, it was stated that it was to be held in trust for the principal's children. The intention of the principal was that such property should be held for his children, only in the event of his encountering a threatening pecuniary disaster, and he intended still to retain a power over it.

*Held,* that the principal might recover such property in an action brought by him against the person to whom it was so delivered.

APPEAL from a judgment in favor of the plaintiff, entered in the county of New York upon the report of a referee.

The action was brought to recover certain bonds belonging to the plaintiff deposited with defendants, J. B. Cornell and J. M. Cornell, and which the latter claimed the right to hold, on the ground that they had been deposited with them to hold in trust for plaintiff's children.

The referee found, among other things, that, at the times here-inafter mentioned, the plaintiff resided and was engaged in business in the city of Lima, in the Republic of Peru, in South America, and the defendant, Joseph S. Spinney, resided and was engaged in business in the city of New York; in the State of New York, and was the business correspondent of the said plaintiff in the city of New York. That the defendants, Henry E. Meiggs, Mary E. Meiggs, William H. Meiggs, Helen C. Meiggs, John C. Meiggs and Frank Meiggs are the children of the plaintiff, all of whom were living at the times hereinafter mentioned, and that all of the said children of the plaintiff are infants. That, at the times here-inafter mentioned, the defendant, Joseph S. Spinner, held in his possession, or under his control, certain funds of the plaintiff, to be applied to such purposes as the plaintiff should direct. That on or about the fifth day of February, 1873, the plaintiff wrote and sent to the said Joseph S. Spinney a letter, of which the following is a copy :

"Lima, *February* 5, 1873.

" Joseph S. Spinney, Esq., New York :

" Dear sir — On receipt of this, please purchase $100,000 U. S. bonds of six per cent interest, and hand them to Messrs. J. B. & J. M. Cornell, charging the same in general account to me, and oblige,              Yours, very truly,

"pp.   HENRY MEIGGS,
" JOHN G. MEIGGS.

" P. S. Charge the cost of these bonds in account current, as purchased for John G. Meiggs.

"pp.   HENRY MEIGGS,
" JOHN G. MEIGGS."

That the said letter was duly received by the said Joseph S. Spinney at the city of New York, and that thereupon the said Joseph S. Spinney purchased for the account of the plaintiff, and with his funds, certain United States bonds, of the kind known as five-twenty bonds of '67 and '68, of the par value of $100,000. That Spinney divided the same into five lots, and placed them in five different envelopes, and indorsed on each envelope the name of one of the children of the plaintiff, and on or about the 16th

day of April, 1873, delivered the said bonds to the defendants, J. B. & J. M. Cornell, and took a receipt for the same, of which the following is a copy :

"NEW YORK, *April* 16, 1873.

"Received from Joseph S. Spinney, to be held in trust for the children of John G. Meiggs, United States five-twenty (5-20) bonds of '67 and '68, amounting to $100,000, par value.

"J. B. & J. M. CORNELL."

That by the letter of February 5, 1873, Spinney was authorized and directed to purchase said bonds, and to deliver the same to the said J. B. & J. M. Cornell, for the account of the plaintiff, and for no other purpose whatever, and that the plaintiff never authorized, directed or empowered the said Joseph S. Spinney to create any trust in respect to the said bonds, or to deliver them to the said J. B. & J. M. Cornell, to be held in trust for the children of the plaintiff, or any of them. That the words in the said receipt, " to be held in trust for the children of John G. Meiggs," were inserted therein by the said J. B. & J. M. Cornell, at the request of Joseph S. Spinney, but that the plaintiff never instructed or authorized him so to request. And he found, as conclusions of law, that no trust was created in respect to the bonds mentioned in the complaint in this action, in favor of the infant defendants therein, or any of them, as against the plaintiff, by the act of Joseph S. Spinney in depositing said bonds in the hands of the defendants, John B. & John M. Cornell, in the names of said infants defendants, and taking the receipts for the same; and that the plaintiff was entitled to judgment.

*Wm. Mitchell, Jr.,* for the appellants.  A gift or trust is made perfect by delivery, and is irrevocable by the donor.  (2 Kent's Com., 439; *Buch* v. *Blagran*, Ambb., 264; *Gilchrist* v. *Stephenson*, 9 Barb., 9; *Cane* v. *Leggatt*, 25 Barb., 394; see *Fellows* v. *Herman*, 4 Lans., 230; 2 Story's Com. on Eq., §§ 972, 973, [2d ed., 1839], 236 ; *Burr* v. *Winthrop*, 1 Johns. Chy., 336, 337.)  Knowledge by the grantee or donee that the grant or gift has been made is not necessary to its completeness and irrevocability.  (*Sidmouth* v. *Sidmouth*, 2 Beav., 447; [17 Am.

Law Reg., 3]; *Smith* v. *Lyne*, 2 You. & Col., 345; [17 Am. Law Reg., 73.]; *Minor* v. *Rogers*, 40 Conn., 512; *Neilson* v. *Blight*, 1 Johns. Cas., 205; *Moses* v. *Mustgatroyd*, 1 Johns. Chy., 119; *Western* v. *Barker*, 12 Johns. Rep., 276; 4 Kent's Com. [7th ed.], 320; Kent's Opinion, *Cumberland* v. *Carlington*, 3 Johns. Chy., 261; *Hunter* v. *Hunter*, 19 Barb., 631; *Gray* v. *Barton*, 55 N. Y., 68; reversing same case, 10 Alb. Law Jour., 122; *Grandgiac* v. *Arden*, 10 Johns., 293 [cited with approval in 23 N. Y., 504].) It is by no means necessary that a trust should be declared by deed; it may be shown to exist by a letter, note or memorandum in writing, etc. (10 Law Lib. [Willis on Trustees], 22; see *Croke* v. *Brooking*, 2 Vern., 106; *Towney* v. *Browther*, 3 Bro. C. C., 161; *Forster* v. *Hall*, 3 Ves., 695; Roberts on Statute of Frauds, 101, 102; and as to effect of letters, etc. (*Ex parte Dabost*, 18 Ves., 143, etc.; *Fortesque* v. *Barnet*, 3 Mylne & Keen, 36; *Taylor* v. *Kelly*, 5 Hun, 115.) The title of the trustees is complete and irrevocable, and will prevail against the person creating the trust, and all subsequent volunteers claiming under him by devise or otherwise. (Hill on Trustees [4th Am. ed.], 130; *Fortesque* v. *Barnet*, 3 Mylne & Keen, 36; *Bolton* v. *Bolton*, 3 Sw., 414, n.; *Sear* v. *Ashwell*, 3 id., 411, n.; *Jeffreys* v. *Jeffreys*, 1 Craig & Phillips, 138.)

*Henry J. Scudder*, for the respondent. There was here no complete delivery in the sense necessary to constitute a valid gift. There was no parting by the owner with all control or dominion over the subject of the gift. (*Little* v. *Willetts*, 37 How. Pr., 493, per TAPPEN, J.; *Jones* v. *Lock* [L. R.], 1 Ch., 25; *Moore* v. *Moore* [L. R.], 18 Eq., 474; *Heartley* v. *Nicholson* [L. R.], 19 id., 233; *Cox* v. *Sprigg*, 6 Md., 274; *Taylor* v. *Staples*, 8 R. I., 170; *Cotteen* v. *Missing*, 1 Madd. Chy., 176; *Harrison* v. *McMennomy*, 2 Edw. Chy., 251; *Neufville* v. *Thomson*, 3 id., 92; *Cook* v. *Husted*, 12 Johns., 188; *Taylor* v. *Fire Department*, 1 Edw. Chy., 294; *Fink* v. *Cox*, 18 Johns., 145; *Smith* v. *Noble*, 2 id., 52; *Pearson* v. *Pearson*, 7 id., 26; *Geary* v. *Page*, 9 Bosw., 290.

DANIELS, J.:

The object of this action was the recovery of certain bonds placed by the defendant, Joseph S. Spinney, in the hands of the

defendants, J. B. & J. M. Cornell, to be held by them in trust for the children of the plaintiff. These bonds were purchased by Spinney under the authority and direction of the plaintiff, and with the funds of the latter; but, in support of the action, it has been insisted that the trust concerning them was wholly unauthorized. In the presentation of the case other and subordinate points have been discussed, but the point made upon the authority exercised in the disposition of the bonds, is the controlling one in the controversy; for if the agent was not empowered to deliver these bonds so as to create such a trust, then, as they were previous to that act concededly the plaintiff's property, they must have still continued so, which will entitle him to recover in the action; while if there was such a delivery authorized, then he must fail, even though the trust was not known to, or accepted by, his children. For the rule now prevailing is, that a trust, when once absolutely created by the act of the settlor, will be irrevocable as to him, even though the beneficiaries may have had no notice of its existence, though it might be otherwise where the rights of creditors intervened. (Perry on Trusts [2d. ed.], § 105, and cases cited in notes.) The point material to be considered, therefore, is whether there was such a delivery of these bonds in this instance, or whether the authority under which the act was performed was not so far qualified as to be subject to the plaintiff's power of revoking the trust. It has been claimed, in support of the position taken on behalf of the plaintiff's minor children, that as Spinney was his general agent, that circumstance should be invoked to confer greater significance upon his act. But that position cannot be allowed to prevail, for the reason that this act was not within the scope of such general agency, even if its existence has been satisfactorily shown. This business was made the subject of special instructions, in no way connected with the existence of any general authority. They were given by letter, and in such terms as indicated the existence of an intention that the agent's acts should be governed by the authority so expressed. For that reason the agency was special in its nature, and the exercise of the authority must accord, in substance, with the terms creating it. The rule might, perhaps, be differently applied in cases where the rights of purchasers for value inter-

vened; but as to mere donees, this restriction should be placed upon the act and authority of the agent. (*Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.*, 3 Kernan, 599, 632–635.) And in order to sustain the gift in their favor, a complete delivery of the subject of it must appear in the case. (*Doty* v. *Willson*, 47 N. Y., 580.) And to render it complete, the control of the donor over the bonds must be entirely divested. No power can be reserved by him to revoke or annul the act of the delivery, or defeat its effect by making any other or different disposition of the property. *Fisher* v *Hall*, 41. N. Y., 416; *Bryant* v. *Bryant*, 42 id., 11.) In the cases of *Gilchrist* v. *Stevenson* (9 Barb., 9), and *Fellows* v. *Heermans* (4 Lansing, 230), and those referred to in the opinions as supporting those decisions, the delivery was complete, and no defect existed or was urged as to the efficiency of the authority under which it was made. For that reason they are in no sense in conflict with the rule already mentioned, requiring that there shall be a complete and valid delivery of the subject of the trust in order to effectively create it. Where that appears not to have been the nature of the act, or where a power of revocation has been reserved over it, there the trust will not become complete by the mere transfer of the subject of it, but it may afterwards be annulled by the exercise of the power. This rule is particularly applicable to cases of voluntary trusts, and it has in repeated instances been extended so far as to sustain the action of the donor for the recovery of the property, even when the intention to retain the power of revocation had to be gathered from somewhat ambiguous circumstances. The cases sustaining this proposition are quite numerous, and they have many of them been stated and cited in the opinion of the chancellor of New Jersey, in deciding the case of *Gamsey* v. *Munday* (24 N. J. Eq. R., 243), which, of itself, is an instructive authority upon this subject. (See, also, *Geary* v. *Page*, 9 Bosw., 290.)

When these bonds were purchased and placed in the hands of the defendants, Cornell, the plaintiff was engaged in the construction of railways in the Republic of Peru. His situation was such as to create apprehension concerning his future pecuniary condition. That depended upon his ability to realize the money becoming due to him in the course of these enterprises. It was in so uncer-

tain a condition as to be the source of anxiety, and in this condition he became impressed with the necessity of doing something for the protection and future support of his minor children, in case his affairs should be affected by disaster, as he feared they might be. Actuated by that purpose, on the 15th of February, 1873, he wrote three letters from Lima, in Peru; two of which were addressed to, and received by the defendant Spinney. In one of them he directed the recipient, "on receipt of this please purchase $100,000 U. S. bonds of six per cent interest, and hand them to Messrs. J. B. & J. M. Cornell, charging the same in general account to me, and oblige," etc. In the letter to the defendants Cornell, he stated that, "under this date I have taken the liberty to ask Mr. Spinney to purchase $100,000 U. S. bonds for my account, and deposit them in your hands, please receive them, and this time I promise you they will not be drawn from you except by me in person, or my heirs. If this shall cause you any inconvenience, don't hesitate to say so to Mr. Spinney, and refuse to receive them. If it shall cause you no inconvenience, please receipt for them in name of firm, and oblige," etc. Under the same date of February 5th, 1873, the plaintiff wrote the other letter to the defendant Spinney, marked "private," in which he stated that, "things look a little dusty here owing to a fight between the government and Dreyfus, by which the loan is for the moment postponed, and to prepare myself for the worst, I have used my power of attorney to ask you to purchase $100,000 U. S. bonds for the cubs, if things come to a regular break," etc. On the 5th of March, 1873, he wrote another letter to the defendant Spinney, in which he made the remark that for the present he had only to confirm the letters of February 5th and 13th, and if possible strengthen those instructions.

It was clearly the nature of these instructions that the title to the bonds should not be irrevocably placed beyond the plaintiff's control. At most, he intended only to provide against a disastrous contingency, which might be encountered by his financial affairs on account of the uncertain condition of the public credit of the local government. That is evinced all through this correspondence; for in his letter to the defendants Cornell, he does not request that they should receive these bonds solely upon a trust

for his children, but merely and only that they should be deposited in their hands, not to be drawn from them unless that was done by himself or his heirs. These terms explicitly rendered the deposit subject to the exercise of the plaintiff's authority over it subsequently. That the bonds were not to be drawn from the depositees, except by himself or his heirs, was a circumstance that carried with it a very decided implication that they might be so drawn by him; and there was nothing in the letters, written at the same time to Spinney, inconsistent with the existence of this authority. In one he merely directed him to hand the bonds, when purchased, to J. B. & J. M. Cornell, without indicating, in any way, for whom or on what terms they should hold them; while, in the other, it was stated that they were for the cubs, by which he intended to designate his children, "if things came to a regular break," which was in perfect harmony with the reservation of the power over the bonds reserved by him in his letters to the Cornells.

It was under this qualified authority that the bonds were purchased and deposited; but that was not in form preserved by the terms of the receipt given for the deposit; which was made on the 16th of April, 1873. Nor in the receipt, in which it was stated that the one hundred thousand dollars of bonds deposited were to be held in trust for the children of the plaintiff. This was not conformable to his instructions, and so far as it failed in that respect the deposit was without authority; and that it was not afterwards designed to be confirmed by the plaintiff has been shown by his letter of May 13, 1873, written to the defendant Spinney; for in that he stated that he had instructed "the Messrs. Cornell to change to registered bonds in their name in trust for me." At that time his financial prospects had undergone a decided improvement, and he deemed himself safe in then exercising the power he had previously reserved over this deposit, and by this letter made use of that authority.

It has been urged that he could not do this, because he had been informed by a letter from Spinney, written on the 10th of March, that a portion of the bonds had been secured and were held by the writer in trust for the children, and that his omission to object to that disposition of them ratified their appropriation

in that way. But that inference cannot properly be deduced from this information, and the omission of the plaintiff to object to the creation of such a trust; for in a general sense the bonds were to be held in trust for the children ; but it was, at the same time, intended to be subordinated to the plaintiff's power of revocation, and it was not stated in the letter that this power was not intended to be preserved. There was an entire absence of any allusion to that subject, and from the omission to object to the terms stated under such circumstances, no confirmation of such a trust could properly be inferred. On the contrary, the presumption from the letter would be that the bonds were held in trust for the children, in the manner he had instructed that to be done, and that was subject to his future power of revocation. The letter of May 13th, by which the change was directed, indicates that the intention, designed to be embodied in this trust in the outset, had never been changed or abandoned, and there is nothing in the case supporting any different view of these transactions, for a ratification of the unauthorized act of an agent can only be inferred from the omission of the principal to object after he has received full knowledge of the act to be ratified, and no such knowledge was communicated in this case, because it was nowhere intimated that the trust for his children had not been rendered subordinate to his power of drawing the bonds from the hands of the trustee, as his letters show that it was designed to be.

The fact that this disposition of his property may not have been consistent with a proper regard for the rights of the plaintiff's creditors, is not important in this controversy, for the bonds are not sought to be held in any way on their account; but simply for the beneficiaries nominated under the trust; and as the trustees cannot hold the bonds for them against the right asserted by the plaintiff, the judgment recovered in his favor ought to be affirmed.

Ingalls, P. J., and Potter, J., concurred.

Judgment affirmed.