764 F.2d 961
 103 Lab.Cas. P 11,528
 WATERFRONT COMMISSION OF NEW YORK HARBOR on behalf of itself
and of the State of New Jersey
v.
SEA LAND SERVICE, INC., Appellant in No. 84-5526,
Seafarers International Union of North America, Atlantic
Gulf, Lakes and Inland Waters District AFL-CIO,
Defendant-Intervenor and Appellant in No. 84-5527,
District No. 1--Pacific Coast District Marine Engineers'
Beneficial Association, AFL-CIO, Defendant Intervenor.
 Nos. 84-5526, 84-5527.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 28, 1985.
Decided June 13, 1985.
 
 Gerald P. Lally, New York City, Gen. Counsel & Atty., for Waterfront Com'n of New York Harbor; David B. Greenfield (argued), Asst. Counsel, of counsel and on the brief.
 Robert J. Attaway (argued), Barlow & Attaway, Princeton, N.J., Jeffrey L. Reiner, Meyner & Landis, Newark, N.J., for Sea-Land Service, Inc., Ann E. Isaac, Sea-Land Service, Inc., Iselin, N.J., of counsel.
 Stephen Burrow (argued), Schulman & Abarbanel, New York City, for Seafarers Inter-Nat. Union of North America, etc.
 Before ADAMS, WEIS and WISDOM*, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 This appeal involves an apparent conflict between the collective bargaining rights of waterfront employees and the registration and licensing requirements of the Waterfront Commission of New York Harbor (Commission). The Commission sought and eventually obtained an injunction in district court compelling registration of certain waterfront workers. The workers' employer and union representatives, defendants in the law suit, opposed the injunction on the ground that it would interfere with their collective bargaining [agreements]. Because we conclude that the registration provisions by their terms require reconciliation with certain aspects of existing collective bargaining agreements, the case will be remanded to the district court for appropriate amendments to the injunctive order. With these amendments, we have endeavored to resolve the conflict by ensuring that the Commission is able to exercise its supervisory authority and that the union's collectively-bargained hiring procedures are maintained.
 
 
 2
 * The Commission was created in 1953 by a New York-New Jersey bi-state compact entitled the Waterfront Commission Compact (Compact). See N.J.Stat.Ann. Sec. 32:23-1 et seq. (West 1963); N.Y.Unconsol.Laws Sec. 9801 et seq. (McKinney 1974). The Compact empowers the Commission to license, register and regulate a wide range of waterfront employees, including, inter alia, pier superintendents and longshoremen. It was designed to deal with widespread corruption and crime on the waterfront. The Compact established a regulatory scheme including the following provisions:
 
 
 3
 (1) Registration of Longshoremen. The Commission was required to set up a longshoremen's register, and only registered persons were allowed to be longshoremen. The right to register was to be absolute, unless an individual was convicted of a crime, engaged in subversive activity, or his employment would be likely to endanger the public safety. Senate Comm. on Interstate & Foreign Commerce, New Jersey-New York Waterfront Commission Compact, S.Rep. No. 583 at 3, 83d Cong., 1st Sess. (1953); House Comm. on the Judiciary, New Jersey-New York Waterfront Commission Compact, H.R.Rep. No. 997 at 7, 83d Cong., 1st Sess. (1953).
 
 
 4
 (b) Employment Information Centers. These were to be established to eliminate abusive hiring practices. They were intended to be a neutral conduit between employees and employers, and according to the legislative history, were not to interfere with collective bargaining agreements. H.R.Rep. No. 998 at 7; S.Rep. No. 583 at 3.
 
 
 5
 (c) Collective Bargaining Rights. Article XV of the Compact states that it "is not designed and shall not be construed to limit in any way" any rights to organize, strike, or bargain collectively. Specifically, it guarantees that hiring procedures will not be displaced where they comport with the Compact.[1]
 
 
 6
 In this action the Commission seeks to extend its regulatory jurisdiction to approximately twenty crane maintenance workers employed by defendant Sea-Land Service, Inc. (Sea-Land). The workers' unions--Seafarers International Union of North America, Atlantic, Gulf, Lake & Inland Water District, AFL-CIO (SIU), which represents Sea-Land's crane maintenance electricians; and District No. 1-Pacific Coast District, Marine Engineers' Beneficial Association, AFL-CIO (MEBA), which represents Sea-Land's port engineers--intervened as defendants in the case.[2] The Commission's complaint alleged that under the terms of the Act, Sea-Land's crane maintenance electricians (CME's) were "longshoremen," and Sea-Land's port engineers constituted "pier superintendents." Accordingly, these employees were alleged to be subject to certain registration and licensing requirements.
 
 
 7
 After extensive discovery, the district court granted summary judgment in favor of the Commission. The district court first determined that the crane maintenance electricians and port engineers were covered by the terms of the Compact. Turning to Sea-Land's claim that registration and licensing would conflict with federal labor law, the court concluded that such conflicts were "factually unfounded," because the Commission had made several concessions in the course of litigation that, in the court's view, ensured the continuing validity of the existing unions.[3]
 
 
 8
 The district court observed that the Commission had agreed to respect the present employer-union relationships in a number of ways: (1) it would "grandfather" in Sea-Land's present CMEs and port engineers (assuming nothing in their records was disqualifying), thereby allowing present employees to be registered and keep their jobs; (2) it would allow Sea-Land to require its new applicants to fill certain qualifications set out in the collective bargaining agreement, insofar as such qualifications were bona fide; (3) it would not oppose SIU or Sea-Land if either insisted that new employees hired from the closed register join SIU within 31 days after being hired as a condition of continued employment; and (4) it would not enforce against Sea-Land's SIU employees any ILA seniority provisions.
 
 
 9
 As an independent ground, the district court concluded that there was no preemption problem, inasmuch as the Waterfront Commission Compact was approved by Congress. It issued the requested injunction, directing the CMEs to register.[4]
 
 
 10
 Sea-Land and SIU subsequently filed motions for reconsideration of the order. Arguing that the court had overlooked a conflict between the hiring procedures set forth in the collective bargaining agreement and those apparently required by the Commission's regulations, SIU sought to have the following paragraph added to the injunctive decree:
 
 
 11
 All unlicensed crane maintenance electricians now employed by Sea-Land shall, if they meet the requirements of the Waterfront Commission Compact and the rules and regulations promulgated by the Commission, and [ ] all unlicensed crane maintenance electricians hereafter to be hired by Sea-Land shall, if they meet the requirements of the Waterfront Commission Compact and the rules and regulations promulgated thereunder, be registered as longshoremen by the Commission and shall then be hired by Sea-Land in accordance with, and from a list of crane maintenance electricians maintained pursuant to, a collective bargaining agreement between Sea-Land and SIU, the collective bargaining representative of said unlicensed crane maintenance electricians. J.A. 669-70.
 
 
 12
 In an opinion filed June 29, 1984, the district court denied the motions for reconsideration. Both Sea-Land and SIU filed prompt appeals.
 
 II
 
 13
 Central to the parties' disagreement on appeal are the hiring procedures utilized by the unions and Sea-Land. The collective bargaining agreements mandate that Sea-Land hire through the SIU and MEBA hiring halls.[5] The Commission regulations stipulate that the employer look first to the longshoremens' register for eligible applicants. In theory, there is no necessary conflict between these two provisions--if SIU were allowed to register their members who have been waiting for CME positions, the requirements of both the Commission and the union could be met.[6] In fact, however, there is a conflict, because the longshoremen's register is closed, and has been closed since 1968.[7] Thus, if the Commission's regulations are applied without exception, the SIU hiring hall procedure may be circumvented, and the rights and expectations of SIU members awaiting employment frustrated.[8]
 
 
 14
 The employer and the union do not challenge the conclusion of the district court that Sea-Land's CME's and port engineers are covered by the Act. Rather, they maintain that the registration and licensing provisions are applied improperly in this situation because they conflict with existing collective bargaining agreements. The union suggests that the conflict can be resolved through adoption in the injunctive order of its proposed language, and contends that such steps are necessitated by the specific terms of the Compact. More broadly, Sea-Land urges that the Commission registration provisions are preempted by federal labor law, and that the registration provisions also raise a number of secondary issues. Because we believe that SIU's suggested amendment, with a minor change, resolves the primary conflict between the collective bargaining agreements and the registration requirements, we will address SIU's appeal first.
 
 A.
 
 15
 SIU charges that the district court erred in directing that future hiring be accomplished through Commission procedures rather than through the SIU hiring halls as stipulated for in the collective bargaining agreement. The union argues that the Compact itself contains conditions that explicitly guide its interpretation where collective bargaining agreements are affected. These provisions, it contends, require an interpretation that does not interfere with collectively-bargained hiring procedures, at least where such an interpretation is congruent with the necessary Commission oversight. The district court erred, it suggests, in overlooking these interpretive guides.
 
 
 16
 The first interpretive guide is Article XV, which declares that the Act "is not designed and shall not be construed to limit in any way any rights of longshoremen ... or their employers to bargain collectively and agree upon any method for the selection of such employees by way of seniority, experience, regular gangs, or otherwise," provided only that the selected employees register with the Commission, are not disqualified as undesirable, and accept employment through an information center. N.J.Stat.Ann. Sec. 32:23-69 (West 1963); N.Y.Unconsol.Laws Sec. 9869 (McKinney 1974).
 
 
 17
 Had this case arisen before the Commission closed the register, there would be no problem. Because the Commission has closed the longshoremen's register, however, the Act's first requirement--that the selected employee be registered--becomes impossible to fulfill for those unregistered members of the union's hiring list. If the register were open, the employer could select an employee according to its collectively-bargained procedure, and would then only have to ensure that the selected employee be registered, and that the actual hiring be effected through a Commission employment center.[9] When the Act was originally approved by Congress, the register was open and indeed the right to register was characterized as absolute. House Comm. on the Judiciary, New Jersey-New York Waterfront Commission Compact, H.R.Rep. No. 997 at 7, 83d Cong., 1st Sess. (1953).
 
 
 18
 If SIU had been notified of the register's closing, and had known that its CMEs would be subject to the registration provision, it could have had its prospective employees register. Because the register was closed some thirteen years before the Commission decided to assert jurisdiction over SIU's crane operators, SIU was never notified. The fact that such notice was required by statute before the register was closed suggests that the drafters considered it necessary in order to avoid conflicts with collective bargaining agreements.
 
 
 19
 The second interpretive guide is found in the closed register provision itself, which declares that "nothing in [the provision] shall be construed to modify, limit or restrict in any way any of the rights protected by article fifteen of this act." N.J.Stat.Ann. Secs. 32:23-114, 32:23-69. This express reference to Article XV dictates that the closed register provision must be interpreted so as not to modify, limit or restrict collectively-bargained hiring rights.
 
 
 20
 SIU suggests that its proposed amendment to the district court order would ensure that this dictate is followed. See supra p. 8. The district court declined to adopt SIU's language, concluding that it "would trench upon the statutory framework of the Waterfront Commission Act." JA 565. We are in accord with the district court that as written, SIU's amendment is too broad. It would have the effect of selectively opening the register to all future Sea-Land crane maintenance electricians. Such a permanent exemption does not seem warranted by the statutory language. We agree with SIU, however, that its members currently on the hiring hall list awaiting CME positions have legitimate expectations created by the collective bargaining agreement, and that Sea-Land has a right to interview these individuals first.
 
 
 21
 In order to prevent the closed register provision from restricting, modifying or limiting collectively-bargained hiring rights, it must be construed as not precluding registration of otherwise eligible members of the newly-affected union. This seems particularly appropriate here, since the provision is being applied some fifteen years after the fact to a union whose members had no notice of the register's closing. Therefore, on remand the district court should amend its order by adding the following language:
 
 
 22
 All unlicensed crane maintenance electricians now employed by Sea-Land shall, if they meet the requirements of the Waterfront Commission Compact and the rules and regulations promulgated by the Commission, and all unlicensed crane maintenance electricians currently on the SIU hiring hall list shall, if they meet the requirements of the Waterfront Commission Compact and the rules and regulations promulgated thereunder, be registered as longshoremen by the Commission and shall then be hired by Sea-Land in accordance with, and from the list of crane maintenance electricians maintained pursuant to the collective bargaining agreement between Sea-Land and SIU, the collective bargaining representative of said unlicensed crane maintenance electricians.
 
 
 23
 Although this modification may appear at first glance to go beyond the literal language of the statute, in fact it ensures that the district court's order is faithful to the requirement that no restriction be placed on current collectively-bargained hiring rights. The order, as altered, maintains both the Commission's supervisory role regarding practices that might lead to corruption and the union's collectively-bargained hiring procedure.
 
 
 24
 We note that the Commission has already agreed to make an exception to the literal terms of the closed register provision by "grandfathering" in present employees, in order to avoid conflict with collectively-bargained rights. See supra p. 964. The amended order merely extends that exception to present members on the hiring hall list. This result would appear to be not only consistent with, but actually required by the statutory language respecting collective bargaining agreements.[10]
 
 B.
 
 25
 Four issues are raised by Sea-Land in its appeal. It maintains first that the Commission's registration of its crane maintenance workers is preempted by federal labor law. Many of the potential conflicts that Sea-Land insists will arise, however, were avoided by the Commission's concessions. See supra note 3 and p. 964. Apparently, the only remaining existing conflict concerns future hiring of present union members, and that will be resolved by the amended order we have instructed the district court to adopt on remand. Moreover, since the Compact itself includes a proviso stating that whenever possible the Compact should be construed or applied consistently with current collective bargaining agreements, the preemption issue need not be reached in this case.
 
 
 26
 Next, Sea-Land asserts that in determining whether to require registration of CMEs, the Commission should have to consider efficiency. It claims that if the Commission's hiring procedures have the effect of introducing members of a different union to the workforce, efficiency will decrease. The district court correctly denied this claim. The determination whether an employee is subject to registration requirements turns solely on the type of work he performs; whether he will in fact be registered depends on whether he has a criminal background or would be a threat to public safety. See N.J.Stat.Ann. 32:23-12; 32:23-14; 32:23-27; 32:23-29 (West 1963). There is no mention of efficiency in the relevant registration provisions.
 
 
 27
 Sea-Land also challenges the district court's grant of injunctive relief. The court issued a continuing injunction compelling Sea-Land to register and license its crane maintenance workers. Although an injunction was requested in the complaint, and is statutorily authorized, N.J.Stat.Ann. 32:23-90, Sea-Land urges that there has been no showing that it is necessary. The district court found an injunction justified on the ground that Sea-Land had repeatedly refused to register or license its employees, JA 562-63, and relied on Continental Terminal v. Waterfront Commission, 486 F.Supp. 1110, 1116 (S.D.N.J.1980), in which an injunction issued compelling registration "although there is no evidence that Continental will flout the judgment of [the] Court." We cannot say that the district court abused its discretion in granting the injunction.
 
 
 28
 Finally, Sea-Land appeals the district court's award of retroactive assessments, challenging both the effective date of the award, and the decision to include interest and a small penalty. The court allowed back assessments with statutory interest of one percent per month and a statutory penalty of five percent per 30 days. The statute authorizing the interest and penalty, N.J.Stat.Ann. 32:23-74(8) (West 1963), provides that "the Commission may, for good cause shown, abate all or part of such penalty." The Commission has not done so, however, and the district court did not consider that determination by the Commission an abuse of discretion. We also are unable to say that this resolution by the Commission constitutes an abuse of discretion.
 
 
 29
 As to the effective date for assessments, however, we cannot affirm the district court. It allowed assessments back to October 21, 1981, the date of the Commission's first demand letter to Sea-Land. On March 18, 1982, however, the Commission requested more information about Sea-Land's crane maintenance personnel, "in order for the Commission to make a factual determination as to whether these employees should be registered or licensed." The letter went on to state, "Once such a determination is made, you will be so advised." JA 48. Sea-Land answered the March 18 letter on April 8, and on April 14, 1982, the Commission commenced suit. We hold that back assessments should begin on April 14, 1982, because the March 18 letter suggests that the Commission had not yet determined that Sea-Land's CMEs should be registered.
 
 III.
 
 30
 For the foregoing reasons, the judgment of the district court will be vacated and the case remanded for amendments to the judgment consistent with this opinion.
 
 
 
 *
 Hon. John Minor Wisdom, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 [1]
 This compact is not designed and shall not be construed to limit in any way any rights of longshoremen, hiring agents, pier superintendents or port watchmen or their employers to bargain collectively and agree upon any method for the selection of such employees by way of seniority, experience, regular gangs or otherwise, provided that such employees shall be licensed or registered hereunder and such longshoremen and port watchmen shall be hired only through the employment information centers established hereunder and that all other provisions of this compact be observed. N.J.Stat.Ann. Sec. 32:23-69 (West 1963); N.Y.Unconsol.Laws Sec. 9869 (McKinney 1974) (emphasis added)
 
 
 [2]
 Suit was initially filed in state court of New Jersey, and was removed to federal district court in May 1982. The district court had jurisdiction under 28 U.S.C. Sec. 1331 (federal question) and 28 U.S.C. Sec. 1337 (Act of Congress regulating commerce), because the Waterfront Commission Compact was formally approved by Congress, and therefore has the status of a federal law. Pub.L. No. 252, ch. 407, 67 Stat. 541, 83d Cong., 1st Sess. (1953). Subsequently, the two unions intervened as defendants; MEBA and the Commission thereafter entered into a stipulation, in which MEBA agreed to be bound by the ultimate disposition of this action. JA 465-67
 
 
 [3]
 The employer and unions had contended that the regulations would have the effect of: undermining the collective bargaining agreements; replacing the SIU and MEBA hiring halls with halls run by the International Longshoremens' Association-New York Shipping Association (ILA); gradually substituting the ILA as representative for the covered workers, as SIU and MEBA members left the workforce and were replaced by ILA members; and in the meantime saddling Sea-Land with the difficulty of employing a work crew governed by divergent sets of work rules
 
 
 [4]
 The Commission had also sought to have a statutory penalty imposed on Sea-Land for refusing to comply with registration provisions, and to have a statutory assessment tax applied retroactively, with both the penalty and the tax dating from its initial request that Sea-Land comply with its registration requirements. The assessments are a tax to defray the costs of Commission oversight, while the penalty is intended to punish those who refuse to comply. The district court allowed the statutory assessments, with a minor penalty, dating back to October 21, 1981, the date of the Commission's first demand letter, but disallowed a larger $500 a day penalty, finding Sea-Land's actions to be in good faith
 
 
 [5]
 Under these procedures, the unions maintain lists based on the seniority of eligible applicants. The employer agrees to interview applicants in the order that they are listed by the union hiring halls
 
 
 [6]
 The registration requirements have nothing to do with seniority. An employer is free to hire anyone on the register, regardless of seniority
 
 
 [7]
 In 1966 the Compact was amended by New York and New Jersey to give the Commission discretion to close and reopen the longshoremen's register. N.J.Stat.Ann. Sec. 32:23-114 (West Supp.1984); N.Y. Unconsol. Laws Sec. 9920 (McKinney 1974 & Supp.1984). This amendment was intended to give the Commission flexibility to deal with reduced manpower needs. The Commission was allowed to close the register "five days after notice thereof [is provided] to the collective-bargaining representatives of stevedores and other employers of longshoremen in the Port of New York district and to the labor organizations representing such longshoremen." Id. The provision also contains a clause directing that "nothing in this [provision] shall be construed to modify, limit, or restrict in any way any of the rights protected by article fifteen of this Act." Id. The Commission closed the register in 1966, opened it temporarily in 1967 and 1968, and has kept it closed thereafter. SIU was not notified when the register was closed, most likely because at that time its employees--the CMEs--were not yet considered longshoremen, and thus not subject to registration requirements. It was not until 1981 that the Commission first sought to classify CMEs as longshoremen
 
 
 [8]
 The Commission hypothesized that no eligible person might be found in the closed register, and noted that after exhausting the register, Sea-Land is free to look to the SIU hiring hall. The district court appears to have adopted the Commission's hypothesis, finding the concerns of SIU and Sea-Land "unfounded." There was conflicting evidence on this point, however, and in a summary judgment posture, all reasonable inferences must be resolved in favor of the party against whom summary judgment is entered. Peterson v. Lehigh Valley District Council, 676 F.2d 81, 84 (3d Cir.1982). The Commission itself admitted that "no party can predict exactly what will happen in the future when a replacement ... is needed." Commission brief at 51. Consequently, the district court erred in resolving this issue in favor of the Commission, and we assume for purposes of this appeal that there may be qualified CME's in the closed register
 
 
 [9]
 Sea-Land claims that the employment centers will of necessity pre-empt the hiring halls. SIU and the Commission, however, correctly note that the employment centers were expressly intended not to interfere with hiring hall procedures. Under the result reached herein, we see no conflict
 
 
 [10]
 The Commission argues that resolution of the hiring issue is premature, as no one has yet been hired through Commission procedures, and, it claims, chances are remote that any qualified individuals will be found on the closed register. The district court's order here sanctions the substitution of one hiring procedure for another, arguably in violation of the statute upon which it relies. It does not seem premature, therefore, when fashioning such relief, to ensure that it comports with the statute's own terms. See Teamsters v. United States, 431 U.S. 324, 374-75, 97 S.Ct. 1843, 1874-75, 52 L.Ed.2d 396 (1977) (court should take employment expectations into account in formulating equitable relief)
 On the other hand, while the issue is not premature insofar as it affects present union members, we do not agree with SIU that we should extend the exception in perpetuity. Although a conflict regarding the need to hire more CMEs than are currently enrolled on the SIU hiring hall list might arise in the future, such a conflict is not yet ripe for review.